James E. Cecchi
**CARELLA, BYRNE, CECCHI,**
**BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

*Counsel for Plaintiffs*
[*Additional Counsel on Signature Page*]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IRMA ARMOUR, CHRISTY BARNETT, STEVEN BORDEN, KRESO BUJAS, VALERIA CALDWELL, REEN CHAI, GINGER COWAN, DELION CUMMINGS, MATTHEW T. DUGAN, EDWINA FRAME, BARBARA GARDINER, LAURIE GILMER, NOAH GORDON, EILEEN GRADY, KATHY L. GREER, CARL HAGLUND, GAIL HAYDEN, SUE HOPFENSITZ, JACQUELYN JOHNSON, KATHLEEN JOHNSON, NICOLE JONES, CYNTHIA KENNEDY, CHAWNTAIN KERMEN, TIM KIVLIN, JESSIE LYNCH, TRENTON MAUK, MARVIN MCANDERSON, KERRY MCLAREN, CHARLEY MILLS, MARCIAL NANEZ, RICHARD NELSON, STEPHANIE NOEL, DAVID RAINTON, JOAN ROWTON, PAULINE SARACENI, MARIELA E. SHAW, NANETTE SOMMERS, TARA SPITTEL, CHRIS STOVALL, BERT TAVARY, STEVEN THOMAS, CHRISTINA THI TRAN, CHARLES VANKIRK, PATRICIA VEGA, SCOTT D. WARD, JEFFREY S. WEIK, and AMY WEISBERG, Individually And On Behalf Of All Others Similarly Situated, | Civil Action No. _____ <br><br> **CLASS ACTION COMPLAINT AND** <br> **DEMAND FOR JURY TRIAL** |
| Plaintiffs, <br> vs. | |
| LG ELECTRONICS U.S.A., INC., | |
| Defendant. | |

## **TABLE OF CONTENTS**

**Section**                                                                                                                                                    **Page**

INTRODUCTION ........................................................................................................................ 1

I.      THE PARTIES.................................................................................................................. 2

    A.     PLAINTIFFS ......................................................................................................... 2

    B.     DEFENDANT ...................................................................................................... 14

II.     JURISDICTION AND VENUE ...................................................................................... 14

III.    GENERAL FACTUAL ALLEGATIONS........................................................................ 14

    A.     The Class Refrigerators Contain a Defective Linear Compressor ........................ 15

    B.     LG's Concealment of the Defect ......................................................................... 19

    C.     Defendant's Knowledge of the Compressor Defect ............................................. 21

    D.     The Warranties .................................................................................................... 29

    E.     PLAINTIFFS PROVIDED PRESUIT NOTICE TO LG ...................................... 30

IV.     CLASS ACTION ALLEGATIONS ................................................................................ 30

    A.     Commonality ....................................................................................................... 33

    B.     Numerosity .......................................................................................................... 34

    C.     Typicality............................................................................................................. 35

    D.     Adequacy of Representation ................................................................................ 35

    E.     Superiority ........................................................................................................... 35

V.      TOLLING OF THE STATUTE OF LIMITATIONS....................................................... 37

VI.     NATIONWIDE CAUSES OF ACTION ......................................................................... 37

VII.    STATE LAW CAUSES OF ACTION ............................................................................ 45

    A.     Arizona ................................................................................................................ 45

    B.     California.............................................................................................................. 52

    C.     Colorado .............................................................................................................. 61

i

D.  Florida ................................................................................................. 68

E.  Georgia ............................................................................................... 75

F.  Illinois ................................................................................................ 82

G.  Michigan ............................................................................................. 89

H.  Nevada ................................................................................................ 96

I.  New York ........................................................................................... 104

J.  North Carolina ................................................................................... 110

K.  Oregon ............................................................................................... 117

L.  Pennsylvania ...................................................................................... 124

M.  Texas .................................................................................................. 132

N.  Washington ........................................................................................ 140

VIII.  PRAYER FOR RELIEF ............................................................................... 147

IX.  DEMAND FOR JURY TRIAL .................................................................... 148

Plaintiffs Irma Armour, Christy Barnett, Steven Borden, Kreso Bujas, Valeria Caldwell, Reen Chai, Ginger Cowan, Delion Cummings, Matthew T. Dugan, Edwina Frame, Barbara Gardiner, Laurie Gilmer, Noah Gordon, Eileen Grady, Kathy L. Greer, Carl Haglund, Gail Hayden, Sue Hopfensitz, Jacquelyn Johnson, Kathleen Johnson, Nicole Jones, Cynthia Kennedy, Chawntain Kermen, Tim Kivlin, Jessie Lynch, Trenton Mauk, Marvin McAnderson, Kerry McLaren, Charley Mills, Marcial Nanez, Richard Nelson, Stephanie Noel, David Rainton, Joan Rowton, Pauline Saraceni, Mariela E. Shaw, Nanette Sommers, Tara Spittel, Chris Stovall, Bert Tavary, Steven Thomas, Christina Thi Tran, Charles VanKirk, Patricia Vega, Scott D. Ward, Jeffrey S. Weik, and Amy Weisberg ("Plaintiffs") bring this action against Defendant LG Electronics U.S.A., Inc. ("LG" or "Defendant") on behalf of all consumers who bought Class Refrigerators[1] to obtain legal and equitable remedies for themselves and on behalf of the proposed Classes.  The allegations below are based on personal knowledge of the Plaintiffs' conduct and are made based on information and belief and the investigation of counsel as to the acts of others.

## **INTRODUCTION**

1.    The Class Refrigerators are defective because they contain defective linear compressors.  This defect is fatal to the operation of refrigerators, which serve one purpose: keeping food, medicine, and other consumable goods at a safe temperature. LG designs, manufactures, distributes, and/or sells the Class Refrigerators throughout the country under the brand name "LG." The Class Refrigerators are available in large retail stores like Sears, Costco, Lowe's, Best Buy and Home Depot, smaller appliance stores, and online.

---

[1] The Class Refrigerators include all LG branded Refrigerators from LG or any other authorized retailer which was manufactured between January 1, 2018 and the present. No Class Refrigerator has been included in any previous class settlement or certified litigation class.

2. The Manufacturer's Suggested Retail Price ("MSRP") for the Class Refrigerators ranges from approximately $1,800 to $7,500, with most models falling in the $1,800 to $3,500 MSRP range.

3. Despite its knowledge that the Class Refrigerators have defective linear compressors, LG has not disclosed the defect to consumers or solved the problem consistent with its warranties.

4. LG has been sued several times for its defective linear compressors and has settled at least three class actions alleging refrigerators containing its linear compressors are defective.

5. Still, LG continued, and continues, to sell and misleadingly advertise the Class Refrigerators even after these earlier class settlements were reached involving the same or similar linear compressors with the same or similar defect.

6. A refrigerator that fails to keep food at a safe temperature has no value because it cannot be used safely. As a result, the Class Refrigerators pose unreasonable risks of property damage and personal injury via food-borne illnesses during everyday use.

7. The Class Refrigerators have significantly less value than promised at the point of sale (*i.e.*, a refrigerator that is prone to storing food at an improper temperature is less valuable than one that can store food at a safe temperature). Accordingly, Plaintiffs seek monetary damages, and any other equitable relief that may be available.

## I.    **THE PARTIES**

### A.    **PLAINTIFFS**

8. Plaintiffs purchased and used LG branded refrigerators because they believed these refrigerators to be high-quality and long-lasting refrigerators that were in the condition marketed/advertised.  At no time during their purchase and use of these refrigerators were Plaintiffs

aware that LG's claims concerning the Class Refrigerators was false and misleading and that these products were actually defective and would break down after a brief period of use.

9.      Plaintiffs would not have purchased the Class Refrigerators had they known that these products were defective and would break down, sometimes less than a year after being purchased.

10.     All Plaintiffs were advised that the defective linear compressor within their Class Refrigerators caused the Class Refrigerator to fail in its essential purpose – *i.e.*, not cooling. Prior to purchase, no Plaintiff knew about the Compressor Defect issues affecting the Class Refrigerators. No Plaintiff who purchased a home containing an LG branded refrigerator knew about the Compressor Defect issues that the Class Refrigerators had at the time of their home purchase.

11.     Prior to each Plaintiff's purchase, Defendant never provided information about the faulty nature of these refrigerators including the defective compressor contained within them, and instead highly promoted these products. Had disclosures about the true nature of these compressors and refrigerators been made prior to each Plaintiff's purchase, Plaintiffs would not have bought these LG branded refrigerators, would not have bought these LG branded refrigerators at the prices they did, or would have returned these LG branded refrigerator for a refund during the return period. In addition, each Plaintiff alleges as follows:

**IRMA ARMOUR**

12.     Plaintiff Armour purchased an LG refrigerator from Best Buy in July 2022 (Model LSXS26366S /11 – Production Date: 2021.06) in Illinois. In September 2024, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**CHRISTY BARNETT**

13.     Plaintiff Barnett purchased an LG refrigerator from Lowe's in December 2020 (Model LRDCS2603S /00 – Production Date: 2020.04) in Georgia. In September 2024, the refrigerator completely stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**STEVEN BORDEN**

14.     Plaintiff Borden purchased an LG refrigerator from Home Depot in May 2018 (Model LSXS26366S /02 – Production Date: 2018.04) in Florida. In March 2022, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**KRESO BUJAS**

15.     Plaintiff Bujas purchased an LG refrigerator from Home Depot in April 2021 (Model LRFCS25D3S /00 – Production Date: 2021.03) in New Jersey. In April 2024, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**VALERIA CALDWELL**

16.     Plaintiff Caldwell purchased an LG refrigerator from Home Depot in April 2019 (Model LFXC24726S /03 – Production Date: 2018.12) in Illinois. In September 2024, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**REEN CHAI**

17.     Plaintiff Chai purchased an LG refrigerator from Northern Home Appliance in or about December 2018 (Model LSXC22426S /00 – Production Date: 2018.09) in New York. In

December 2023, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**GINGER COWAN**

18.     Plaintiff Cowan purchased an LG refrigerator from Costco in October 2018 (Model LFXS28596M /00 – Production Date: 2018.08) in Colorado. In March 2022, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**DELION CUMMINGS**

19.     Plaintiff Cummings purchased an LG refrigerator from Home Depot in November 2019 (Model LRFVS3006S /00 – Production Date: 2019.11) in California but is a resident of Nevada. In July 2024, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**MATTHEW T. DUGAN**

20.     Plaintiff Dugan purchased an LG refrigerator directly from LG in October 2021 (Model LRMVS3006S /01 – Production Date: 2021.07) in California. In July 2024, the refrigerator stopped working as it should, resulting in damage to Plaintiff.

**EDWINA FRAME**

21.     Plaintiff Frame purchased an LG refrigerator from Lowe's in approximately April 2019 (Model LSX26326S /04 – Production Date: 2019.02) in Georgia. In February 2023, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**BARBARA GARDINER**

22.     Plaintiff Gardiner purchased an LG refrigerator directly from Home Depot in March 2019 (Model LSXS26386S /03 – Production Date: 2019.01) in Colorado. In February 2024, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**LAURIE GILMER**

23.     Plaintiff Gilmer purchased an LG refrigerator from Standard TV & Appliance in April 2019 (Model LFXC24726S /03 – Production Date: 2018.10) in Oregon. In March 2023, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**NOAH GORDON**

24.     Plaintiff Gordon purchased an LG refrigerator from Lowe's in July 2020 (Model LRDCS2603S /00 – Production Date: 2020.06) in North Carolina. In December 2022, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**EILEEN GRADY**

25.     Plaintiff Grady purchased an LG refrigerator from Lowe's in June 2021 (Model LRFXS2503S /01 – Production Date: 2021.07) in New York. In March 2024, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**KATHY L. GREER**

26.     Plaintiff Greer purchased an LG refrigerator from Conn's Appliances in December 2021 (Model LFX25974ST /00 – Production Date: 2021.11) in Texas. In July 2023, the refrigerator

stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**CARL HAGLUND**

27.    Plaintiff Haglund purchased four LG refrigerators from Home Depot in November 2020 (including one which is Model LFCC22426S /04 – Production Date: 2020.11) in Washington. All four refrigerators were installed between March 2021 and July 2021. Three of the four refrigerators purchased and installed stopped working as they should within two years of installation, resulting in damage to Plaintiff.

**GAIL HAYDEN**

28.    Plaintiff Hayden purchased an LG refrigerator from Home Depot in December 2019 (Model LMXS28626S /02 – Production Date: 2019.11) in Washington. In July 2024, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**SUE HOPFENSITZ**

29.    Plaintiff Hopfensitz purchased an LG refrigerator from R.C. Willey in November 2019 (Model LFXS28968D /01 – Production Date: 2018.12) in Nevada. In September 2023, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**JACQUELYN JOHNSON**

30.    Plaintiff Jacquelyn Johnson purchased an LG refrigerator from Conn's Appliances in September 2018 (Model LFXS29766S /01 – Production Date: 2018.04) in Texas. In August 2023, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**KATHLEEN JOHNSON**

31.     Plaintiff Kathleen Johnson purchased an LG refrigerator from ABT Electronics in July 2022 (Model LRFCS2503S /00 – Production Date: 2021.12) in Illinois. In October 2024, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**NICOLE JONES**

32.     Plaintiff Jones purchased an LG refrigerator from Sears in approximately June 2019 (Model LFXC24796S /01 – Production Date: 2019.04) in New York. In August 2022, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**CYNTHIA KENNEDY**

33.     Plaintiff Kennedy purchased an LG refrigerator from Best Buy in September 2020 (Model LRMVS3006S /00 – Production Date: 2020.07) in Washington. In May 2024, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**CHAWNTAIN KERMEN**

34.     Plaintiff Kermen purchased an LG refrigerator from Lowe's in September 2019 (Model LSXS26326S /05 – Production Date: 2019.08) in Washington. In June 2024, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**TIM KIVLIN**

35.     Plaintiff Kivlin purchased an LG refrigerator from Pacific Kitchen & Home in approximately September 2018 (Model LFXC24726S /03 – Production Date: 2018.07) in North

Carolina. In June 2023, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**JESSIE LYNCH**

36.    Plaintiff Lynch purchased an LG refrigerator from Costco in March 2021 (Model LFCS22520S /05 – Production Date: 2021.01) in Oregon. In September 2024, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**TRENTON MAUK**

37.    Plaintiff Mauk purchased an LG refrigerator from Lowe's in May 2018 (Model LMXC23796D – Production Date: 2018.04) in Michigan. In July 2023, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**MARVIN MCANDERSON**

38.    Plaintiff McAnderson purchased an LG refrigerator from JC Penney in October 2018 (Model LSXS263660 – Production Date: 2018.08) in Texas. In September 2022, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**KERRY MCLAREN**

39.    Plaintiff McLaren purchased an LG refrigerator from Best Buy in December 2018 (Model LFC22770ST /03 – Production Date: 2018.09) in Illinois. In October 2024, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**CHARLEY MILLS**

40.     Plaintiff Mills purchased an LG refrigerator from ABC Warehouse in January 2021 (Model LRFCS2503S /00 – Production Date: 2020.12) in Michigan. In October 2023, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**MARCIAL NANEZ**

41.     Plaintiff Nanez purchased an LG refrigerator from Lowe's in 2019 (Model LFXS26596S /00 – Production Date: 2018.08) in Texas. In September 2024, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**RICHARD NELSON**

42.     Plaintiff Nelson purchased an LG refrigerator from Best Buy in September 2018 (Model LSXC22396D /00 – Production Date: 2018.06) in Oregon. In August 2024, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**STEPHANIE NOEL**

43.     Plaintiff Noel purchased an LG refrigerator directly from Home Depot in April 2021 (Model LRDCS2603S /00 – Production Date: 2021.03) in California. In February 2024, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**DAVID RAINTON**

44.     Plaintiff Rainton purchased an LG refrigerator directly from Costco in June 2019 (Model LSSB2692ST – Production Date: 2019.03) in California. In October 2024, the refrigerator

stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**JOAN ROWTON**

45.    Plaintiff Rowton purchased an LG refrigerator from Spencers TV & Appliance in May 2019 (Model LFXS30766D /01 – Production Date: 2018.07) in Arizona. In September 2024, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**PAULINE SARACENI**

46.    Plaintiff Saraceni purchased an LG refrigerator from Home Depot in April 2021 (Model LRFCS25D3S /00 – Production Date: 2021.04) in New York. In May 2024, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**MARIELA E. SHAW**

47.    Plaintiff Shaw purchased an LG refrigerator from Home Depot in September 2020 (Model LFCS22520S /05 – Production Date: 2020.11) in New York. In April 2024, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**NANETTE SOMMERS**

48.    Plaintiff Sommers purchased an LG refrigerator from Home Depot in July 2019 (Model LFXS24623S /02 – Production Date: 2019.05) in Arizona. In September 2024, the refrigerator stopped working as it should, resulting in damage to Plaintiff.

**TARA SPITTEL**

49.     Plaintiff Spittel purchased an LG refrigerator from Home Depot in November 2018 (Model LFXS26596S /00 – Production Date: 2018.10) in New Jersey. In September 2024, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**CHRIS STOVALL**

50.     Plaintiff Stovall purchased an LG refrigerator from Direct Appliance in January 2022 (Model LFXS26973D /10 – Production Date: 2021.11) in California. In November 2023, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**BERT TAVARY**

51.     Plaintiff Tavary purchased an LG refrigerator from Lowe's in June 2019 (Model LMXC23796D /00 – Production Date: 2019.03) in Florida. In September 2024, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**STEVEN THOMAS**

52.     Plaintiff Thomas purchased an LG refrigerator from Costco in 2018 (Model LMXS30796S /00 – Production Date: 2018.08) in Pennsylvania. In July 2024, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**CHRISTINA THI TRAN**

53.     Plaintiff Tran purchased an LG refrigerator directly from Home Depot in February 2021 (Model LRFCS25D3S /00 – Production Date: 2022.01) in California. In October 2024, the refrigerator stopped working as it should, resulting in damage to Plaintiff.

**CHARLES VANKIRK**

54.    Plaintiff Vankirk purchased an LG refrigerator from Home Depot in April 2022 (Model LFXS28968D /08 – Production Date: 2021.12) in New Jersey. In March 2024, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**PATRICIA VEGA**

55.    Plaintiff Vega purchased an LG refrigerator from Home Depot in 2019 (Model LSXS26396S /00 – Production Date: 2018.07) in New Jersey. In September 2023, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**SCOTT D. WARD**

56.    Plaintiff Ward purchased an LG refrigerator from Lowe's in or about 2019 (Model LFXS28968S /00 – Production Date: 2018.09) in Arizona. In September 2024, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages and loss of medication.

**JEFFREY S. WEIK**

57.    Plaintiff Weik purchased an LG refrigerator from Appliance Parts on Ebay in March 2019 (Model LFDS22520S /01 – Production Date: 2018.09) in Pennsylvania. In October 2024, the refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

**AMY WEISBERG**

58.    Plaintiff Weisberg purchased an LG refrigerator from ABT Electronics in May 2019 (Model LFXS30796S /01 – Production Date: 2019.03) in Illinois. In August 2023, the

refrigerator stopped working as it should, resulting in damage to Plaintiff, including but not limited to hundreds of dollars in spoiled foods/beverages.

### B.    DEFENDANT

59.    Defendant LG Electronics U.S.A., Inc., the North American subsidiary of LG Electronics Inc., is incorporated under Delaware law and maintains its principal place of business at 111 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

## II.    JURISDICTION AND VENUE

60.    This Court has original jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) at least one member of the proposed Class is a citizen of a state different from that of Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, (c) the proposed Class consists of more than 100 class members, and (d) none of the exceptions under 28 U.S.C. § 1332(d) apply to this action.

61.    The United States District Court for the District of New Jersey has jurisdiction over Defendant because it resides and conducts business in New Jersey, has purposely availed itself of the laws of New Jersey, and because many of the specific events giving rise to this action occurred in New Jersey.

62.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Defendant has marketed, advertised, and sold the Refrigerators, and otherwise conducted extensive business, within this District. In addition, Defendant's principal place of business is in New Jersey.

## III.    GENERAL FACTUAL ALLEGATIONS

63.    A crucial component of any modern American household, refrigerators are found in most homes. By cooling food and medicines, like insulin, to safe temperatures, refrigerators

reduce the risk of illness and ensure vital medications do not break down, degrade, or lose effectiveness.

64.     The compressor is often called the "heart" of a refrigerator because it circulates refrigerant throughout the system. A refrigerator cannot work without a functioning compressor.

65.     Based on information and belief, the Class Refrigerators came with an express warranty that the linear compressor would function for 10 years.  Yet when consumers have made warranty claims for malfunctioning refrigerators, Defendant has not replaced the defective refrigerators with working units, or replaced the original defective compressors with another defective compressor.  LG has failed to offer full refunds and, often, could not provide repair services to consumers. Even when consumers have received repair services, many consumers have paid Defendant out of their own pocket, only to experience another failure months or a few years later.  In fact, LG has engaged in futile repairs or replaced defective compressors with other defective compressors—a practice that, for many, has resulted in repeated refrigerator failures. Consumers who bought these refrigerators have been forced to live out of coolers, have had to buy replacement refrigerators prematurely, have had to pay hefty amounts of money for replacement of the compressors, which in some cases have again failed after only a few months of being replaced, have had to throw away hundreds of dollars worth of spoiled food, have had to get rid of their LG refrigerator because technicians around the country refuse to repair these refrigerators, and at times have had to live without a working refrigerator while waiting for LG to perform repairs.

### A.    THE CLASS REFRIGERATORS CONTAIN A DEFECTIVE LINEAR COMPRESSOR

66.     Every refrigerator has a compressor. It is a critical component to the operation of a refrigerator because it moves or pumps refrigerant—a cooling substance that changes from liquid

to gas—through the refrigerator's system. The refrigerator's temperature sensors trigger the compressor to start and stop the cooling process. Once the temperature rises above a set level, the compressor draws cold refrigerant gas from the refrigerator's evaporator. The refrigerant enters the compressor through an intake valve and the compressor then puts pressure on the refrigerant gas (compressing it), which raises the refrigerant's temperature and pushes the gas through its discharge valve, then through the coils on the outside of the refrigerator. When the hot gas in the coils meets the cooler air temperature in the room, it becomes a liquid. The refrigerant then passes through an expansion valve, which decreases its pressure and continues to flow through the coils inside the freezer and the refrigerator. As the cold liquid refrigerant moves through the coils, it cools the air in the refrigerator by absorbing the heat from the surrounding air. The refrigerant then evaporates into gas, flows back into the compressor, and the process repeats.

67.    LG developed its proprietary linear compressor in the early 2000s. LG designed the linear compressor as an energy-efficient replacement for the reciprocating compressor used in many other refrigerators. LG's linear compressor drives a piston motor with a magnet and springs.

68.    LG's proprietary linear compressor refrigerators are important to its business and are featured prominently in its public representations, advertisements, and marketing materials.

69.    LG singled out the linear compressor in its public statements about its refrigerators: "LG is so confident in its technology that the Inverter Linear Compressor has been covered under a 10-year warranty since 2009, a first in the industry."[2]  However, LG's linear compressors are defective because they often fail well before the industry standard (and typical warranty period) of 10 years of normal usage.

---

[2]    *See*    https://www.lgnewsroom.com/2014/11/10-million-homes-benefiting-from-lg-refrigerators-with-inverter-linear-compressor-technology/ (last visited November 7, 2024).

70.    LG issued another press release on March 21, 2017 to mark the sale of its "15th million refrigerator worldwide powered by its proprietary Inverter Linear Compressor"—which LG characterized as "the appliance division's most successful core technology." In the same release, LG projected that it would sell 4 million more units in 2017, or "an average of seven refrigerators sold every minute."

71.    Similar statements appear on LG's website, product pages, YouTube Channels, and social media pages. Some examples of the statements made by LG concerning the subject compressors and refrigerators are:

(a)    "The cutting edge design and performance of LG Refrigerators is unmatched. Designed to last long, store more, and add style to your home, an LG Refrigerator keeps food cold and fresh in a space-saving and stylish unit."[3]

(b)    "LG provides reliable & state-of-the-art compressor and motors based on advanced technology that keep customers up to date with the latest part."[4]

(c)    "LG's Inverter Linear Compressor is a critical component of every premium refrigerator and is considered a core technology behind the success of the company's appliances. Unlike conventional rotary compressors that utilize circular motion, LG's Linear Compressor converts linear motion into cooling power much more efficiently. This process reduces energy

_____

[3] *See* https://www.lg.com/us/refrigerators (last visited November 7, 2024).
[4] *See* https://www.lg.com/global/business/compressor-motor (last visited November 7, 2024).

consumption and noise level compared to refrigerators with conventional motors."[5]

(d)     "Why LG Linear Compressors? LG Linear Compressor has higher efficiency and less efficiency variation. LG Linear compressor runs stable without causing noise. Fewer friction points reduce the noise level. LG linear compressor has better responsiveness of control."[6]

(e)     With 20 years lifetime warranty, we are confident that our fridges are one of the most durable and reliable products available in the market.

(f)     "Freshness, Energy Efficiency, Durability, Quiet."[7]

(g)     "LG's Inverter Linear technology is designed only with essential parts, improving performance and durability."[8]

(h)     "LG is the first to add Linear Technology to its refrigerators, ensuring food stays fresher for longer."[9]

(i)     10-Year Warranty – Peace of mind for 10-years with Inverter Linear Compressor.

---

[5] *See* https://lgcorp.com/media/release/7242 (Press Release dated May 12, 2017) (last visited November 7, 2024).

[6]                                                                                   *See* https://www.lg.com/global/business/download/resources/CT00000308/LG_Leaflet_Linear_Compressor[20201204_165059].pdf (last visited November 7, 2024).

[7] *See* https://www.youtube.com/watch?v=_lsrYCBPReE (last visited November 7, 2024).

[8] *See* https://www.youtube.com/watch?v=_lsrYCBPReE (last visited November 7, 2024).

[9] *Id.*

(j)    "The Linear Compressor, a core technology of LG, is quiet and efficient. Its unique direct transmission mechanism minimizes mechanical loss, thus saving energy, increasing durability and making less noise."[10]

(k)    "The innovative Linear Compressor, featured on LG refrigerators, helps to ensure a more consistent temperature inside your fridge, to help all your favorites stay fresh longer."[11]

(l)    "The LG Inverter Linear Compressor has surpassed the 20-year lifespan test," "the testing was conducted according to LG's internal accelerated 20-year life-test protocol," and that because of these purported results, "LG is so confident it backs the compressor with a 10 year warranty."[12]

## B.    LG'S CONCEALMENT OF THE DEFECT

72.    LG has continued to sell the Class Refrigerators without (a) warning consumers of the real possibility that the Class Refrigerators may be unable to store food at a safe temperature; (b) recalling the Class Refrigerators; (c) offering to repair the Class Refrigerators free of charge; and/or (d) refunding consumers any or all of the purchase price they paid for their Class Refrigerators.

73.    LG's linear compressors contain an intake valve—where refrigerant enters—and a discharge valve—where refrigerant exists. These valves are responsible for regulating and controlling the flow of refrigerant through the compressor. LG's linear compressors work in close connection with another essential component, called the evaporator. The evaporator is where heat transfer takes place. Together, the compressor and evaporator are vital components in cooling.

---

[10] *See* https://www.youtube.com/watch?v=XREmacrlZ-0 (last visited November 7, 2024).

[11] *See* https://www.youtube.com/watch?v=1T3kaHjwMJU (last visited November 7, 2024).

[12]    *See*    https://www.lg.com/eg_en/home-appliances/coretech/refrigerator    (last    visited November 7, 2024).

Before refrigerant enters the compressor, it flows through the evaporator. The evaporator absorbs heat from the refrigerator's interior into the refrigeration system. This process causes the refrigerant to vaporize, and the vaporized refrigerant is then sent through the compressor. As used here, "Compressor Defect" refers to the defective nature of the linear compressor and related parts, including the evaporator, in the refrigerators. The tubing of the evaporator in the refrigerators is defective and prone to corrosion and pitting from ordinary usage. Pin-holes develop in the evaporator tubing, which causes leaks and allows atmospheric air to enter. Because of the air leakage, the refrigerant that passes from the evaporator to the condenser generates excess pressure that stresses the compressor and contaminates oil in the compressor. The compressor's components are defective and incapable of withstanding the additional pressure, resulting in failure. Typically, the weakest component of the compressor—the discharge valve—is the first to fail. In light of the Defect, Plaintiffs and other Class Members paid far more than the reasonable value of the Refrigerators, and would not have paid such prices had LG disclosed the Defect described above.

74.    LG had a duty to disclose that the Class Refrigerators had a Compressor Defect to Plaintiffs and Proposed Class Members but failed to do so.

75.    LG sold the Class Refrigerators to Plaintiffs and Proposed Class Members and made the warranties and express representations described above, knowing that the Class Refrigerators were defective. LG knew or should have known that the linear compressors were prone to a defect that causes failure or the temperature in the Class Refrigerators to rise and vary such that it is unsafe to store food, medicine, and other perishables.

76.    The Compressor Defect was not disclosed to Plaintiffs, or other Proposed Class Members, at the point of sale when they bought their respective Class Refrigerators, nor has LG

disclosed them to Proposed Class Members since purchase. Instead, LG has tried to prevent Proposed Class Members from learning of the Compressor Defect.

77.    LG has profited and continues to profit from the sale of the Class Refrigerators by failing to disclose the Compressor Defect described above and continuing to sell the Class Refrigerators at prices well above their reasonable value.

78.    As a direct and proximate result of LG's false warranties, misrepresentations, and failure to disclose the Compressor Defect in the Class Refrigerators, Plaintiffs and the Proposed Class have purchased the Class Refrigerators and suffered injury.

79.    As a direct and proximate result of LG's concealment of the Compressor Defect, its failure to warn its customers of the Compressor Defect and the safety risks posed by the Class Refrigerators, and its failure to remove the defective Class Refrigerators from consumers' homes or otherwise remedy the Compressor Defect, Plaintiffs and Proposed Class Members purchased the Class Refrigerators. Had Plaintiffs and Proposed Class Members known of this serious safety risk, they would not have purchased the Class Refrigerators, would have paid substantially less for their Class Refrigerators than they paid, and/or would have sought to have them removed at LG's expense before failure.

## C.    DEFENDANT'S KNOWLEDGE OF THE COMPRESSOR DEFECT

80.    Many complaints of malfunctioning refrigerators, dating back a decade, have been made directly to LG on its website and on social media pages that Defendant regularly monitors. Consumers, including Plaintiffs, have contacted LG many times by telephone, email, and text message and notified them of the defective compressors within these LG-branded refrigerators. Consumers have also left reviews on Defendant's websites, have posted on social media accounts of Defendant, and have even complained to their own State's Attorney General's office about the unlawful practices of Defendant LG in selling defective products in the market. Just a few

examples of hundreds of reviews left regarding these refrigerators on Defendant's websites, which include responses from Defendant LG, establishing that Defendant was on notice of these defects, are as follows:[13]



---

[13]    *See,    e.g.,*    https://www.homedepot.com/p/LG-28-cu-ft-4-Door-French-Door-Smart-Refrigerator-with-Ice-and-Water-Dispenser-in-PrintProof-Stainless-Steel-LMXS28626S/302253240;

https://www.costco.com/lg-27-cu.-ft.-4-door-french-door-refrigerator-with-smartdiagnosis.product.100711321.html;

https://www.lowes.com/pd/LG-Smart-Wi-Fi-Enabled-27-8-cu-ft-4-Door-French-Door-Refrigerator-with-Ice-Maker-Fingerprint-Resistant-Stainless-Steel-ENERGY-STAR/1000297793;

https://www.bestbuy.com/site/reviews/lg-24-5-cu-ft-french-door-smart-refrigerator-with-external-tall-ice-and-water-stainless-steel/6360730?variant=A&skuId=6360730&rating=1     (last visited November 7, 2024).



23



81.     Aggrieved consumers have formed multiple Facebook groups, including one called

"LG Refrigerators – Life is NOT good" which has over  2,200 followers and contains several

accounts of consumers who experience LG refrigerator compressor failure. Below, are just a few examples of hundreds of said accounts:[14]



**LG Refrigerators - LIFE is NOT GOOD**
October 3 · 🌐

$3500 to purchase; 21/2 yrs later, $15 for Best Buy to haul away and replace. 10 yr warranty on a compressor plus a 5 yr extended warranty doesn't help when you can't get the part or anyone to work on them!  Now isn't this great advertising for what Not to Buy!  LG Life is NOT GOOD

 22                    16 Comments  1 Share

**LG Refrigerators - LIFE is NOT GOOD**
September 20 · 🌐

I work for an appliance repair business, one of a few that repairs LG refrigerators, Every other call I get is a customer with a non cooling refrigerator. If you have one and have had no issues you are on borrowed time.

Hearing it directly from a repair business says a lot.  Just not enough for LG to do something about it.  #%*& LG

 22                    11 Comments  1 Share



**LG Refrigerators - LIFE is NOT GOOD**
September 27 · 🌐

Good luck! We went four months without ours. We finally found someone to repair it after waiting on parts. Two weeks later it was out again. I will NEVER buy another LG product again!   Really LG, is this the best you can do? Apparently it is according to everyone else who posts on this site.

 27                    14 Comments  1 Share

---

[14] *See* https://www.facebook.com/LgRefrigerators/ (last visited November 7, 2024).



82.     As shown above, consumers, including Plaintiffs, have for many years made daily complaints to Defendant, by telephone and by written communication.

83.     Moreover, Defendant had exclusive and direct knowledge of the scale of the compressor problems not only from their communications with their complaining customers but also from communications with their authorized repair personnel, who have been inundated by repair requests for years.[15]

84.     Based on Plaintiffs' experiences, when they contacted various appliance repair personnel, many repair technicians outright refused to work on LG refrigerators due to their knowledge that the refrigerators were defective, their inability to warrant their work and the expectation that any replaced LG compressor would fail again given its inherent defect, making the repair personnel potentially liable and prone to lose credibility.[16] When Plaintiffs managed to

---

[15]    *See*   https://kutv.com/news/get-gephardt/pandemic-of-dying-lg-fridges-has-log-jammed-repair-workers (last visited November 7, 2024).

[16]    *Id.* ("Knight says she called repairman after repairman and, as soon as she told them her fridge is an LG, she says they each told her they were months out or that they don't work on LGs anymore….Worse, LG problems were starting to hurt his brand because customers were beginning to associate their fridges dying with Appliance Service by Paul, he said.").

secure appliance repair personnel, many times it was certified LG service companies, which directly report the issues to LG and *may* get reimbursed for their work by LG or other Defendant.[17]

85. The oversized inundation of repair requests of LG compressors is well-known by Defendant, as it is documented and dates to several years ago, having been characterized as an outsized "national" and "pandemic" failure.[18] Defendant has known that LG compressors within the refrigerators fail "significantly more [than other brands]."[19] In response to negative news reports dating back years, which outlined the systematic failure of the LG compressors within the refrigerators and the customers' inability to get the issues resolved, LG even publicly recognized the need to hire more authorized repair personnel to address the litany of defective LG compressors by saying that it was hiring "more LG technicians to assist customers quickly and effectively."[20]

86. Furthermore, many consumers, including many Plaintiffs, have been told by LG's *own* authorized repair personnel that the issue with the dying compressors is one that "happens all the time." LG's *own* authorized repair technicians have also advised many Plaintiffs that even if

---

[17] *Id.* ("Appliance Service by Paul was among the service companies who turned Knight down in her quest for fridge repair. Dodge says Appliance Service by Paul was a certified LG service company for many years but, after months of frustration, he told LG his company is done working on LGs. 'We're just getting buried in it,' he said…Worse, LG problems were starting to hurt his brand because customers were beginning to associate their fridges dying with Appliance Service by Paul, he said. Worst, when his team would go out and fix fridges for LG, Dodge says he struggled to get LG to reimburse his company. 'They've taken months to even pay us the claims,' he said.").

[18] *Id.*

[19] *Id.* ("Appliance Service by Paul technician Tyler Murphy showed Get Gephardt a pile of about 50 bad LG fridge compressors, as well as photos showing they have repaired dozens more. Murphy says those compressors are from service calls over a period of just a couple of months.).

'It's significantly more [than other brands],' Murphy said. 'The other brands, we maybe replace a couple compressors a month.'").

[20] *Id.* ("'The problem was LG's poor design of products and lack of support for both the service company and the consumer,' [a LG authorized repair service] added. 'We have NOTHING to do with the national failure of these products.'").

they replace the old compressor with a brand new one, the maximum expected life of the new compressor is no more than two-years, as the replacement compressor is also defective. LG's own authorized repair technicians have also stated to many Plaintiffs that on average they replace a minimum of two of these faulty compressors a day, and one Plaintiff was even told by Defendant's **own** authorized repair personnel that he has replaced over 2000 defective compressors in the last four years. This number is vastly greater than repairs to any other type of compressor and refrigerator.

87.     Multiple technicians from various refrigerator repair companies that Plaintiffs have contacted to repair their LG model refrigerators have stated to Plaintiffs that they specifically do not repair LG refrigerators because of the high rate of compressor failures and LG's failure to adequately respond to the problem by providing non-defective parts for repairs. The fact that technicians are not willing to work on these branded refrigerators has made it even more difficult on Plaintiffs and the class members who wish to have their refrigerators repaired to continue using them, given the high cost of buying a new refrigerator.

88.     Additionally, multiple technicians who do work on LG refrigerators have advised Plaintiffs and the class members that at times they replace up 5 to 10 LG compressors per day given the high rate of compressor failures in LG branded refrigerators. This number is vastly greater than repairs to any other type of compressor and refrigerator. Some of these technicians have been in contact with LG  about the compressor failures, and in order to obtain the necessary replacement parts. Many of these technicians are also LG authorized service personnel, and, consequently, report directly to LG with respect to all LG repair requests.  These LG authorized service personnel also request and obtain reimbursement for certain repairs of LG compressors. Almost all of these technicians have further advised those Plaintiffs who had their compressors

replaced that the replaced compressor will likely fail, and their refrigerator will stop cooling again within a few months. Many have suggested that Plaintiffs purchase other branded refrigerators as another compressor failure is imminent.

89.    Finally, LG has gained direct knowledge of the Compressor Defect through its role as a designer and manufacturer of the compressor products at issue.

### D.    THE WARRANTIES

90.    LG is a merchant of refrigerators under the Uniform Commercial Code.

91.    LG marketed and advertised that the Class Refrigerators were of merchantable quality and fit for their intended purpose.

92.    Because the industry standard lifetime of refrigerators is at least 10 years, a refrigerator is not fit for its ordinary use if it has a compressor that routinely fails well before the 10-year mark. The 10-year duration of LG's warranty for its linear compressors confirms this industry standard.

93.    Along with the express warranties described above, LG marketed, advertised, and warranted that the Class Refrigerators were of merchantable quality and fit for their intended purpose. LG also marketed, advertised, and warranted that the Refrigerators were free from defect and did not pose an unreasonable risk to persons or property. A refrigerator that cannot maintain an appropriate temperature for its contents is not fit for its intended purposes and would not pass without objection in the trade.

94.    The implied warranty of merchantability therefore required the Class Refrigerators to meet this industry standard of ordinary use. The Class Refrigerators come with a one-year express manufacturer's warranty for the unit. Upon information and belief, most of the Class Refrigerators also come with a 10 year express manufacturer's warranty for the linear compressor. The warranty further protects against defects in the sealed system for 5 years.

95.     The warranty for the Refrigerators is offered on a take-it-or-leave-it basis, and consumers are not afforded an opportunity to negotiate for more favorable terms in the warranty because of the parties' relative bargaining power.

96.     Although the warranties protect the Refrigerators from the allegedly defective parts at issue, based on information and belief, LG routinely denies warranty claims based on the alleged Defect.

### E.     PLAINTIFFS PROVIDED PRESUIT NOTICE TO LG

97.     On September 26, 2024, Plaintiffs Steven Borden, Ginger Cowan, Edwina Frame, Noah Gordon, Sue Hopfensitz, Nicole Jones, Chawntain Kermen, Trenton Mauk, Pam Sellers, Chris Stovall, Patricia Vega, and Amy Weisberg provided LG with notice that it had breached express and/or implied warranties and engaged in unfair, fraudulent, deceptive, and other unlawful acts and practices in connection with your manufacturing, advertising, marketing, and/or sale of the Refrigerators. LG failed to respond to Plaintiffs' notice letter which as stated was a rejection of all demands. Notice had thus already been provided and any further notice would be futile for the all other Plaintiffs for whom the notice letter was not explicitly addressed. Service of the letter was completed by process server. The notice is attached hereto as **Exhibit A**.

## IV.    CLASS ACTION ALLEGATIONS

98.     As further stated herein as to the following claims, Plaintiffs bring their causes of action on behalf of themselves and all others similarly situated, and certification of this class action is appropriate because the questions of law or fact common to the respective Class members predominate over questions of law or fact affecting only individual members.

99.     Plaintiffs seek certification of a **Nationwide Class**: All persons in the United States who purchased, other than for resale, an LG branded Refrigerator from LG or any other authorized retailer which was manufactured between January 1, 2018 and the present.

100.    In addition and/or in the alternative, Plaintiffs seek  certification of the following State Subclasses:

101.    **New Jersey Class:** All persons in New Jersey who purchased, other than for resale, a Refrigerator from LG or any other authorized retailer which was manufactured between January 1, 2018 and the present.

102.    **Arizona Class:** All persons in Arizona who purchased, other than for resale, a Refrigerator from LG or any other authorized retailer which was manufactured between January 1, 2018 and the present.

103.    **California Class:** All persons in California who purchased, other than for resale, a Refrigerator from LG or any other authorized retailer which was manufactured between January 1, 2018 and the present.

104.    **Colorado Class:** All persons in Colorado who purchased, other than for resale, a Refrigerator from LG or any other authorized retailer which was manufactured between January 1, 2018 and the present.

105.    **Florida Class:** All persons in Florida who purchased, other than for resale, a Refrigerator from LG or any other authorized retailer which was manufactured between January 1, 2018 and the present.

106.    **Georgia Class:** All persons in Georgia who purchased, other than for resale, a Refrigerator from LG or any other authorized retailer which was manufactured between January 1, 2018 and the present.

107.    **Illinois Class:** All persons in Illinois who purchased, other than for resale, a Refrigerator from LG or any other authorized retailer which was manufactured between January 1, 2018 and the present.

108. **Michigan Class:** All persons in Michigan who purchased, other than for resale, a Refrigerator from LG or any other authorized retailer which was manufactured between January 1, 2018 and the present.

109. **Nevada Class:** All persons in Nevada who purchased, other than for resale, a Refrigerator from LG or any other authorized retailer which was manufactured between January 1, 2018 and the present.

110. **New York Class:** All persons in New York who purchased, other than for resale, a Refrigerator from LG or any other authorized retailer which was manufactured between January 1, 2018 and the present.

111. **North Carolina Class:** All persons in North Carolina who purchased, other than for resale, a Refrigerator from LG or any other authorized retailer which was manufactured between January 1, 2018 and the present.

112. **Oregon Class:** All persons in Oregon who purchased, other than for resale, a Refrigerator from LG or any other authorized retailer which was manufactured between January 1, 2018 and the present.

113. **Pennsylvania Class:** All persons in Pennsylvania who purchased, other than for resale, a Refrigerator from LG or any other authorized retailer which was manufactured between January 1, 2018 and the present.

114. **Texas Class:** All persons in Texas who purchased, other than for resale, a Refrigerator from LG or any other authorized retailer which was manufactured between January 1, 2018 and the present.

115.   **Washington Class:** All persons in Washington who purchased, other than for resale, a Refrigerator from LG or any other authorized retailer which was manufactured between January 1, 2018 and the present.

116.   Excluded from the Class are Defendant's officers, employees, agents or affiliates, and any judge who presides over this action, as well as past and present employees, officers and directors of Defendant.  Plaintiffs reserve the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

## A.    COMMONALITY

117.   There are questions of law and fact that are common to the claims of Plaintiffs. Among these common questions are the following:

(a)    Whether the LG branded refrigerators were defective at the time of sale;

(b)    Whether and how much the Compressor Defect impairs the value of the LG branded refrigerators;

(c)    Whether Defendant knew of the Compressor Defect but continued to promote the LG branded refrigerators, including their linear compressors, without disclosing the defect or its consequences to consumers;

(d)    Whether a reasonable consumer would consider the Compressor Defect and its consequences important to the decision whether to buy an LG branded refrigerator;

(e)    Whether Defendant breached implied warranties connected with the LG branded refrigerators;

(f)    Whether Defendant's representations and omissions relating to the LG branded refrigerators and their linear compressors were likely to deceive a reasonable consumer;

(g)    Whether Defendant's representations and/or omissions regarding the LG branded refrigerators were fraudulent;

(h)    Whether Defendant violated state consumer protection laws by misrepresenting material information to consumers regarding the LG branded refrigerators;

(i)    Whether Defendant violated state consumer protection laws by concealing material information from consumers regarding the LG branded refrigerators they sold;

(j)    Whether Defendant violated state consumer protection laws by using uniform, deceptive business practices;

(k)    Whether Defendant were unjustly enriched as a result of its conduct;

(l)    Whether Class Members have been injured by Defendant's conduct;

(m)    Whether, and to what extent, equitable relief and/or other relief should be imposed on Defendant, and, if so, the nature of such relief; and

(n)    Whether Defendant's conduct as set forth above injured consumers, and if so, the extent of the injury and damages.

**B.    NUMEROSITY**

118.    The members of the Class are so numerous that separate joinder of each member is impracticable.  Plaintiffs are informed and believe that the members of the Class would easily exceed at least tens of thousands of individuals.

### C.    TYPICALITY

119.    Plaintiffs' claims are typical of the claims of the Class since each of the Plaintiffs were subject to the same or similar practices by Defendant, as was each member of the Class. Plaintiffs and Class members were injured in the same manner by purchasing LG branded refrigerators. Plaintiffs and all Class members have the same claims against Defendant relating to the conduct alleged here, and the same events giving rise to Plaintiffs' claims for relief are identical to those giving rise to the claims of all Class Members. Plaintiffs and all Class members sustained monetary and economic injuries arising out of Defendant's conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class Members.

120.    The core issues which predominate over all the other issues in the litigation involve Defendant's unfair, unlawful, negligent and fraudulent practices discussed above.

### D.    ADEQUACY OF REPRESENTATION

121.    Plaintiffs will fairly and adequately protect the interests of the Class and are committed to the vigorous prosecution of this action. They have retained competent counsel, experienced in litigation of this nature, to represent them and members of the Class.  There is no hostility between Plaintiffs and the unnamed Class members.  Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

122.    To prosecute this case, Plaintiffs have chosen experienced counsel who have represented plaintiffs in class actions.

### E.    SUPERIORITY

123.    The questions of law or fact common to the claims of Plaintiffs and of each Class member predominate over any questions of law or fact affecting only individual members of the Class.  All claims by named Plaintiffs and unnamed Class members are based on the same alleged "across the board" representations by Defendant and other acts constituting negligence, fraudulent

misrepresentations and concealments, and violations of various consumer protection acts, and breach of implied warranty of merchantability.

124.    Common issues predominate when as here, liability can be determined on a class-wide basis, even when there are some individualized damages.

125.    As a result, when determining whether common questions predominate, courts focus on the liability issue and if the liability issue is common to the class as common questions are held to predominate over individual questions.

126.    Since all claims by named Plaintiffs and unnamed Class members are based on the same alleged "across the board" failures by Defendant, the predominance requirement needed for class action treatment is satisfied.

127.    A class action is superior to thousands of individual actions in part because of the non-exhaustive factors listed below:

(a)    Joinder of all class members would create extreme hardship and inconvenience for the affected consumers because of their immense geographical dispersion.

(b)    It is highly unlikely that individual Plaintiffs would shoulder the burden of this vast and complex litigation as many are simply too poor or uneducated about Defendant's actions to bring separate actions;

(c)    The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

(d)    Individual suits would not be cost effective.  The costs to individual Plaintiffs in a collective action are lowered through the pooling or resources and by limiting the controversy to one proceeding which efficiently resolves

common issues of law and fact that arose from the same alleged activity; and

(e)    The action is manageable as a class action; individual lawsuits are not economically maintainable as individual actions.

128.    Defendant have also acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final declaratory relief with respect to the Classes as a whole.

## V.    TOLLING OF THE STATUTE OF LIMITATIONS

129.    At all relevant times, Defendant knew that the Class Refrigerators were defective and knew that Plaintiffs and class members did not have such knowledge. Despite reasonable diligence on their part, Plaintiffs and class members were kept ignorant by Defendant of the factual bases for the claims for relief asserted below.

130.    Defendant actively concealed the Compressor Defect by touting the Class Refrigerators as high quality and functionality without disclosing their defective nature. Defendant's concealment prevented Plaintiffs and class members from discovering their injuries and pursuing legal relief from Defendant.

131.    Plaintiffs did not discover and could not reasonably have discovered the Compressor Defect until their Class Refrigerators prematurely failed.

## VI.    NATIONWIDE CAUSES OF ACTION

### Nationwide Count 1: Breach of Express Warranty (N.J. Stat. Ann. §§ 12A:2-313 and 12A:2A-210)

132.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

133.    Plaintiffs bring this count under New Jersey law, individually and on behalf of the Nationwide Class, against LG, as the application of New Jersey law is appropriate. In the

alternative, Plaintiffs bring this count under the laws of their states of purchase, and Plaintiffs Kreso Bujas, Tara Spittel, Charles Vankirk, and Patricia Vega, bring this count individually and on behalf of the other members of the New Jersey Subclass, against LG.

134.    For purposes of this count, members of the New Jersey Subclass shall be referred to as "Class Members."

135.    The Refrigerators are "goods" under N.J. Stat. Ann. §§ 12A:2-105(1) and 12A:2A-103(1)(h).

136.    LG is a "merchant" of the Refrigerators under N.J. Stat. Ann. §§ 12A:2-104(1) and 12A:2A-103(3), and a "seller" under § 12A:2-103(1)(d).

137.    Plaintiffs and Class Members who purchased the Refrigerators in New Jersey are "buyers" under N.J. Stat. Ann. § 12A:2-103(1)(a).

138.    LG issued an express written warranty for each defective Refrigerator it sold, including that:

(a)    The Refrigerators would be free of defects in materials and workmanship at the time of sale; and

(b)    The Refrigerators were reliable and at a minimum would function properly during the warranty period.

(c)    The warranties listed above formed the basis of the bargain with regard to Plaintiffs and Class Members' purchase of the Refrigerators.

139.    LG knowingly breached its warranty for the Refrigerators because:

(a)    The Refrigerators contain the Compressor Defect that renders the Refrigerators unable to perform their most basic function: cooling and preserving food and beverages; and

(b) LG denied, concealed, and misrepresented the Compressor Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

140. LG knew or should have known that the warranties were false and/or misleading. Specifically, LG was aware of the Compressor Defect in the Refrigerators, which made the Refrigerators inherently defective at the time that they were sold to Plaintiffs and Class Members.

141. Plaintiffs and Class Members were exposed to LG's misrepresentations, and they had no way of discerning that LG's representations were false and misleading or otherwise learning the material facts that LG had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on LG's express warranties when purchasing their Refrigerators.

142. Plaintiffs and Class Members timely provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing LG's notice above.

143. Alternatively, Plaintiffs and Class Members were excused from providing LG with notice and an opportunity to cure the breach, because it would have been futile.

144. As a direct and proximate result of LG's breach of its express warranties, the Refrigerators were and are defective and the Compressor Defect was not remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase for the Refrigerators with a latent defect that would not be remedied.

**Nationwide Count 2: Breach of Implied Warranty of Merchantability (N.J. Stat. Ann. §§ 12A:2-314 and 12A:2A-212)**

145. .Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

146.     Plaintiffs bring this count under New Jersey law, individually and on behalf of the Nationwide Class, against LG, as the application of New Jersey law is appropriate. In the alternative, Plaintiffs bring this count under the laws of their states of purchase, and Plaintiffs Kreso Bujas, Tara Spittel, Charles Vankirk, and Patricia Vega, bring this count individually and on behalf of the other members of the New Jersey Subclass, against LG.

147.     For purposes of this count, members of the New Jersey Subclass shall be referred to as "Class Members."

148.     The Refrigerators are "goods" under N.J. Stat. Ann. §§ 12A:2-105(1) and 12A:2A-103(1)(h).

149.     LG is a "merchant" of the Refrigerators under N.J. Stat. Ann. § 12A:2-104(1), and a "seller" under § 12A:2-103(1)(d).

150.     Plaintiffs and Class Members who purchased the Refrigerators in New Jersey are "buyers" under N.J. Stat. Ann. § 12A:2-103(1)(a).

151.     New Jersey law conferred an implied warranty that the Refrigerators were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to N.J. Stat. Ann. §§ 12A:2-314 and 12A:2A-212.

152.     The Refrigerators are not merchantable, and as such LG breached their implied warranties, because at the time of sale and all times thereafter:

153.     The Refrigerators would not pass without objection in the home appliance trade given the Compressor Defect;

154.     The Compressor Defect renders the Refrigerators unfit for ordinary purposes;

155.     The packaging and user manuals of the Refrigerators failed to disclose the Compressor Defect; and

156.    The Refrigerators do not conform to their labeling, which represents that the Refrigerators are suitable for their intended use.

157.    Plaintiffs and Class Members timely provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing LG's notice above.

158.    Alternatively, Plaintiffs and Class Members were excused from providing LG with notice and an opportunity to cure the breach because it would have been futile.

159.    Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

## Nationwide Count 3: Violation of the New Jersey Consumer Fraud Act (N.J. Stat. Ann. § 56:8-1, *et seq.*)

160.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

161.    Plaintiffs bring this count under New Jersey law, individually and on behalf of the Nationwide Class, against LG, as the application of New Jersey law is appropriate. In the alternative, Plaintiffs bring this count under the laws of their states of purchase, and Plaintiffs Kreso Bujas, Tara Spittel, Charles Vankirk, and Patricia Vega, bring this count individually and on behalf of the other members of the New Jersey Subclass, against LG.

162.    For purposes of this count, members of the New Jersey Subclass shall be referred to as "Class Members."

163.    LG, Plaintiffs, and Class Members are "persons" under N.J. Stat. Ann. § 56:8-1(d).

164.    The Refrigerators and the Defective Compressors installed in them are "merchandise" under N.J. Stat. Ann. § 56:8-1(c).

165.    The New Jersey Consumer Fraud Act ("New Jersey CFA") prohibits unlawful practices. N.J. Stat. Ann. § 56:8-2.

166.    In the course of their business, LG, through its agents, employees, and/or subsidiaries, violated the New Jersey CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability and performance of the Refrigerators and the Defective Compressors, as detailed above.

167.    LG had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the New Jersey CFA in the course of their business. Specifically, LG owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Compressors in the Refrigerators because:

(a)    Given LG's role in the design, manufacture, testing, and sale of Refrigerators and Defective Compressors it possessed exclusive access to and was in a superior position to know the true facts about the Defective Compressors;

(b)    Given the Compressor Defect's hidden and technical nature, Plaintiffs and Class Members lack the expertise in refrigeration technology that would be necessary to discover the Compressor Defect on their own;

(c)    LG knew that the Compressor Defect gave rise to serious concerns for the consumers who purchased the Refrigerators; and

(d)    LG made, helped to make, or conspired to make incomplete representations about the performance and reliability of the Refrigerators, while purposefully withholding material facts about a known defect. Because LG volunteered to provide information about the Refrigerators that they

marketed and offered for sale to consumers, LG had the duty to disclose the whole truth.

168.    LG's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Refrigerators had a properly-functioning and reliable cooling system. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the functionality and reliability of the Refrigerators and/or the Defective Compressors installed in them, the quality of the Refrigerators, and the true value of the Refrigerators.

169.    LG intended for Plaintiffs and Class Members to rely on its misrepresentations, omissions, and concealment—which they did by purchasing the Refrigerators at the prices they paid believing that their purchase would not have a Compressor Defect that would affect the quality and reliability of the Refrigerators.

170.    LG's misrepresentations, concealments, omissions, and suppressions of material facts regarding the Compressor Defect and true characteristics of the Refrigerators were material to the decisions of Plaintiffs and Class Members to purchase those Refrigerators, as LG intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on LG's misrepresentations that the Refrigerators were properly-functioning and reliable in deciding to purchase the Refrigerators.

171.    Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that LG's representations were false and misleading, or otherwise learning the facts that

LG had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel LG's deception on their own.

172.    Had they known the truth about the Compressor Defect, Plaintiffs and Class Members would not have purchased the Refrigerators, or would have paid significantly less for them.

173.    As a direct and proximate result of LG's deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a Refrigerator they otherwise would not have purchased or paying more than they otherwise would have as a result of LG's actions and omissions alleged above—that first occurred at the time each Refrigerator was purchased.

174.    Pursuant to N.J. Stat. Ann. § 56:8-19, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the New Jersey CFA.

**Nationwide Count 4: Unjust Enrichment (New Jersey Common Law)**

175.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

176.    Plaintiffs bring this count under New Jersey law, individually and on behalf of the Nationwide Class, against LG, as the application of New Jersey law is appropriate. In the alternative, Plaintiffs bring this count under the laws of their states of purchase, and Plaintiffs Kreso Bujas, Tara Spittel, Charles Vankirk, and Patricia Vega, bring this count individually and on behalf of the other members of the New Jersey Subclass, against LG.

177.    For purposes of this count, members of the Nationwide Class shall be referred to as "Class Members."

44

178.    When they purchased the Refrigerators, Plaintiffs and Class Members conferred tangible and material economic benefits upon LG, who readily accepted and retained these benefits.

179.    Plaintiffs and Class Members would not have purchased their Refrigerators, or would have paid less for them, had they known of the Compressor Defect at the time of purchase. Therefore, LG profited from the sale of the Refrigerators to the detriment and expense of Plaintiffs and Class Members.

180.    LG appreciated these economic benefits. These benefits were the expected result of LG acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Compressor Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Refrigerators while profiting from this deception.

181.    It would be unjust, inequitable, and unconscionable for LG to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

182.    Plaintiffs and Class Members are entitled to restitution of the benefits LG unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those LG, with such amounts to be determined at trial.

183.    Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages or enters judgment on them in favor of LG, Plaintiffs will have no adequate legal remedy.

## VII.    STATE LAW CAUSES OF ACTION

### A.    ARIZONA

**Arizona Count 1: Breach of Express Warranty (Ariz. Rev. Stat. Ann. §§ 47.2313 and 47-2A210)**

184. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

185. Plaintiffs Joan Rowton, Nanette Sommers, and Scott D. Ward ("Plaintiffs" for purposes of the Arizona Counts) bring this count under Arizona law, individually and on behalf of the other members of the Arizona Subclasses against LG.

186. For purposes of this count, members of the Arizona Subclass shall be referred to as "Class Members."

187. The Refrigerators are "goods" under Ariz. Rev. Stat. Ann. §§ 47-2105(A) and 47-2A103(A)(8).

188. LG is a "merchant" and "seller" of the Refrigerators under Ariz. Rev. Stat. Ann. §§ 47-2104(A) and 47-2A103(C)(11), § 47-2103(A)(4) and § 47-2a103(A)(16).

189. Plaintiffs and Class Members who purchased the Refrigerators in Arizona are "buyers" under Ariz. Rev. Stat. Ann. § 47-2103(A)(1) and § 47-2A103(A)(14).

190. LG issued an express written warranty for each defective Refrigerator it sold, including that:

(a) The Refrigerators would be free of defects in materials and workmanship at the time of sale; and

(b) The Refrigerators were reliable and at a minimum would function properly during the warranty period.

191. The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and Class Members' purchase of the Refrigerators.

192. LG knowingly breached its warranty for the Refrigerators because:

(a)     The Refrigerators contain the Compressor Defect that renders the Refrigerators unable to perform their most basic function: cooling and preserving food and beverages; and

(b)     LG denied, concealed, and misrepresented the Compressor Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

193.    LG knew or should have known that the warranties were false and/or misleading. Specifically, LG was aware of the Compressor Defect in the Refrigerators, which made the Refrigerators inherently defective at the time that they were sold to Plaintiffs and Class Members.

194.    Plaintiffs and Class Members were exposed to LG's misrepresentations, and they had no way of discerning that LG's representations were false and misleading or otherwise learning the material facts that LG had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on LG's express warranties when purchasing their Refrigerators.

195.    Plaintiffs and Class Members timely provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing LG's notice, above.

196.    Alternatively, Plaintiffs and Class Members were excused from providing LG with notice and an opportunity to cure the breach, because it would have been futile.

197.    As a direct and proximate result of LG's breach of its express warranties, the Refrigerators were and are defective and the Compressor Defect was not remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase for the Refrigerators with a latent defect that would not be remedied.

**Arizona Count 2: Breach of Implied Warranty of Merchantability (Ariz. Rev. Stat. Ann. § 44-1521, *et seq.*)**

198.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

199.    Plaintiffs Joan Rowton, Nanette Sommers, and Scott D. Ward ("Plaintiffs" for purposes of the Arizona Counts) bring this count under Arizona law, individually and on behalf of the other members of the Arizona Subclasses against LG.

200.    For purposes of this count, members of the Arizona Subclass shall be referred to as "Class Members."

201.    The Refrigerators are "goods" under Ariz. Rev. Stat. Ann. §§ 47-2105(A) and 47-2A103(A)(8).

202.    Plaintiffs and Class Members are "buyers" of the Refrigerators under Ariz. Rev. Stat. Ann. § 47-21-3(A)(1) and § 47-2a103(A)(14).

203.    LG is a "merchant" and "seller" under Ariz. Rev. Stat. Ann. §§ 47-2104(A) and 47-2A103(C)(11), § 47-2103(A)(4) and § 47-2a103(A)(16).

204.    Arizona law conferred an implied warranty that the Refrigerators were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Ariz. Rev. Stat. Ann. §§ 47-2314 and 47-2A212.

205.    The Refrigerators are not merchantable, and as such LG breached their implied warranties, because at the time of sale and all times thereafter:

> (a)    The Refrigerators would not pass without objection in the home appliance trade given the Compressor Defect;
>
> (b)    The Compressor Defect renders the Refrigerators unfit for ordinary purposes;

(c)     The packaging and user manuals of the Refrigerators failed to disclose the Compressor Defect; and

(d)     The Refrigerators do not conform to their labeling, which represents that the Refrigerators are suitable for their intended use.

206.    Plaintiffs and Class Members timely provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing LG's notice, above.

207.    Alternatively, Plaintiffs and Class Members were excused from providing LG with notice and an opportunity to cure the breach because it would have been futile.

208.    Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

## Arizona Count 3: Violation of the Arizona Consumer Fraud Act (Ariz. Rev. Stat. Ann. § 44-1521, *et seq.*)

209.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

210.    Plaintiffs Joan Rowton, Nanette Sommers, and Scott D. Ward ("Plaintiffs" for purposes of the Arizona Counts) bring this count under Arizona law, individually and on behalf of the other members of the Arizona Subclasses against LG.

211.    For purposes of this count, members of the Arizona Subclass shall be referred to as "Class Members."

212.    LG, Plaintiffs, and Class Members are "persons" under Ariz. Rev. Stat. Ann. § 44-1521(6).

213.    The Refrigerators are "merchandise" under Ariz. Rev. Stat. Ann § 44-1521(5).

214. The Arizona Consumer Fraud Act ("Arizona CFA") prohibits unlawful business practices and declares them to be unlawful. Ariz. Rev. Stat. Ann § 44-1522(A).

215. LG's violations of the Arizona CFA occurred repeatedly in its trade or practice—including the design, manufacture, distribution, marketing, and sale of the Refrigerators.

216. LG, through its agents, employees, and/or subsidiaries, violated the Arizona CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability and performance of the Refrigerators and the Defective Compressors, as detailed above.

217. LG had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Arizona CFA in the course of their business. Specifically, LG owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Compressors in the Refrigerators because:

(a) Given LG's role in the design, manufacture, testing, and sale of Refrigerators and Defective Compressors it possessed exclusive access to and was in a superior position to know the true facts about the Defective Compressors;

(b) Given the Compressor Defect's hidden and technical nature, Plaintiffs and Class Members lack the expertise in refrigeration technology that would be necessary to discover the Compressor Defect on their own;

(c) LG knew that the Compressor Defect gave rise to serious concerns for the consumers who purchased the Refrigerators; and

(d) LG made, helped to make, or conspired to make incomplete representations about the performance and reliability of the Refrigerators, while

purposefully withholding material facts about a known defect. Because LG volunteered to provide information about the Refrigerators that they marketed and offered for sale to consumers, LG had the duty to disclose the whole truth.

218.    LG's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Refrigerators had a properly-functioning and reliable cooling system. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the functionality and reliability of the Refrigerators and/or the Defective Compressors installed in them, the quality of the Refrigerators, and the true value of the Refrigerators.

219.    LG intended for Plaintiffs and Class Members to rely on its misrepresentations, omissions, and concealment—which they did by purchasing the Refrigerators at the prices they paid believing that their purchase would not have a Compressor Defect that would affect the quality and reliability of the Refrigerators.

220.    LG's misrepresentations, concealments, omissions, and suppressions of material facts regarding the Compressor Defect and true characteristics of the Refrigerators were material to the decisions of Plaintiffs and Class Members to purchase those Refrigerators, as LG intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on LG's misrepresentations that the Refrigerators were properly-functioning and reliable in deciding to purchase the Refrigerators.

221.   Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that LG's representations were false and misleading, or otherwise learning the facts that LG had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel LG's deception on their own.

222.   Had they known the truth about the Compressor Defect, Plaintiffs and Class Members would not have purchased the Refrigerators, or would have paid significantly less for them.

223.   As a direct and proximate result of LG's deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a Refrigerator they otherwise would not have purchased or paying more than they otherwise would have as a result of LG's actions and omissions alleged above—that first occurred at the time each Refrigerator was purchased.

224.   LG's violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Refrigerators remain improperly functioning due to the Defective Compressors therein. LG's unlawful acts and practices complained of herein affect the public interest.

225.   Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

## B.    CALIFORNIA

**California Count 1: Breach of Express Warranty (Cal. Com. Code §§ 2313 and 10210)**

226.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

227.    Plaintiffs Irma Armour, Valeria Caldwell, Kathleen Johnson, Kerry McLaren, and Amy Weisberg ("Plaintiffs" for purposes of the California Counts) bring this count under California law, individually and on behalf of the other members of the California Subclasses against LG.

228.    For purposes of this count, members of the California Subclass shall be referred to as "Class Members."

229.    The Refrigerators are "goods" under Cal. Com. Code §§ 2105(1) and 10103(a)(8).

230.    LG is a "merchant" and "seller" of the Refrigerators under Cal. Com. Code §§ 2104(1), 10103(c), and 2103(1)(d), respectively.

231.    Plaintiffs and Class Members who purchased the Refrigerators in California are "buyers" under Cal. Com. Code §§ 2103(1)(a), 10103(a)(14).

232.    LG issued an express written warranty for each defective Refrigerator it sold, including that:

(a)    The Refrigerators would be free of defects in materials and workmanship at the time of sale; and

(b)    The Refrigerators were reliable and at a minimum would function properly during the warranty period.

233.    The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and Class Members' purchase of the Refrigerators.

234.    LG knowingly breached its warranty for the Refrigerators because:

(a)    The Refrigerators contain the Compressor Defect that renders the Refrigerators unable to perform their most basic function: cooling and preserving food and beverages; and

53

(b)     LG denied, concealed, and misrepresented the Compressor Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

235.    LG knew or should have known that the warranties were false and/or misleading. Specifically, LG was aware of the Compressor Defect in the Refrigerators, which made the Refrigerators inherently defective at the time that they were sold to Plaintiffs and Class Members.

236.    Plaintiffs and Class Members were exposed to LG's misrepresentations, and they had no way of discerning that LG's representations were false and misleading or otherwise learning the material facts that LG had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on LG's express warranties when purchasing their Refrigerators.

237.    Plaintiffs and Class Members timely provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing LG's notice, above.

238.    Alternatively, Plaintiffs and Class Members were excused from providing LG with notice and an opportunity to cure the breach, because it would have been futile.

239.    As a direct and proximate result of LG's breach of its express warranties, the Refrigerators were and are defective and the Compressor Defect was not remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase for the Refrigerators with a latent defect that would not be remedied.

**California Count 2: Breach of Implied Warranty of Merchantability (Cal. Com. Code §§ 2314 and 10212)**

240.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

241.    Plaintiffs Irma Armour, Valeria Caldwell, Kathleen Johnson, Kerry McLaren, and Amy Weisberg ("Plaintiffs" for purposes of the California Counts) bring this count under California law, individually and on behalf of the other members of the California Subclasses against LG.

242.    For purposes of this count, members of the California Subclass shall be referred to as "Class Members."

243.    The Refrigerators are "goods" under Cal. Com. Code §§ 2105(1) and 10103(a)(8).

244.    Plaintiffs and Class Members are "buyers" of the Refrigerators under Cal. Com. Code §§ 2103(1)(a) and 10103(a)(14).

245.    LG is a "merchant" and "seller" under Cal. Com. Code §§ 2104(1), 10103(c), and 10103(a)(16).

246.    California law conferred an implied warranty that the Refrigerators were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Cal. Com. Code §§ 2314 and 10212.

247.    The Refrigerators are not merchantable, and as such LG breached their implied warranties, because at the time of sale and all times thereafter:

248.    The Refrigerators would not pass without objection in the home appliance trade given the Compressor Defect;

249.    The Compressor Defect renders the Refrigerators unfit for ordinary purposes;

250.    The packaging and user manuals of the Refrigerators failed to disclose the Compressor Defect; and

251.    The Refrigerators do not conform to their labeling, which represents that the Refrigerators are suitable for their intended use.

252. Plaintiffs and Class Members timely provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing LG's notice, above.

253. Alternatively, Plaintiffs and Class Members were excused from providing LG with notice and an opportunity to cure the breach because it would have been futile.

254. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

**California Count 3: Violations of the Song-Beverly Act (Civ. Code § 1790, *et seq.*) via Breach of Implied Warranty**

255. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

256. Plaintiffs Irma Armour, Valeria Caldwell, Kathleen Johnson, Kerry McLaren, and Amy Weisberg ("Plaintiffs" for purposes of the California Counts) bring this count under California law, individually and on behalf of the other members of the California Subclass against LG for their respective Refrigerators.

257. For purposes of this count, members of the California Subclass shall be referred to as "Class Members."

258. Cal. Civ. Code § 1792 provides that, unless properly disclaimed, every sale of consumer goods is accompanied by an implied warranty of merchantability. LG did not at any time properly disclaim the warranty.

259. The Refrigerators are "consumer goods" under Cal. Civ. Code § 1791(a).

260.     Plaintiffs and Class Members are "buyers" under Cal. Civ. Code §§ 1791(b) and (h). LG is the "manufacturer" and "seller" of the Refrigerators under Cal. Civ. Code §§ 1791(i), (j), and (l).

261.     LG knew of the particular purposes for which the Refrigerators and the Defective Compressors were intended and impliedly warranted to Plaintiffs and Class Members that the Refrigerators (all of which were equipped with a Defective Compressor) were "merchantable" under Cal. Civ. Code §§ 1791.1(a) & 1792.

262.     The Refrigerators are not merchantable, and as such LG breached their implied warranties, because:

(a)     The Refrigerators would not pass without objection in the home appliance trade because they are equipped with Defective Compressors;

(b)     The Compressor Defect renders the refrigerators unfit for ordinary purposes;

(c)     The packaging and user manuals of the Refrigerators failed to disclose the Compressor Defect; and

(d)     The Refrigerators do not conform to their labeling, which represents that the Refrigerators are suitable for their intended use.

263.     Plaintiffs and Class Members received the Refrigerators in a condition which substantially diminishes their value, and which prevents the Refrigerators from properly functioning. As a result of LG's failure to comply with their statutory obligations, Plaintiffs are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of their Refrigerators, or the overpayment or diminution in value of their Refrigerators.

264.    Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

### California Count 4: Violations of California's Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*)

265.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

266.    Plaintiffs Irma Armour, Valeria Caldwell, Kathleen Johnson, Kerry McLaren, and Amy Weisberg ("Plaintiffs" for purposes of the California Counts) bring this count under California law, individually and on behalf of the other members of the California Subclasses against LG.

267.    For purposes of this count, members of the California Subclass shall be referred to as "Class Members."

268.    LG is a "person" under Cal. Civ. Code § 1761(c).

269.    Plaintiffs and Class Members are "consumers" under Cal. Civ. Code § 1761(d) because they purchased the Refrigerators primarily for personal, family, or household use.

270.    The purchase of the Refrigerators by Plaintiffs and Class Members constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

271.    The Refrigerators are "goods" under Cal. Civ. Code § 1761(a).

272.    LG's violations of the CLRA occurred repeatedly in its trade or practice—including the design, manufacture, distribution, marketing, and sale of the Refrigerators.

273.    LG, through its agents, employees, and/or subsidiaries, violated the CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose

material facts regarding the reliability and performance of the Refrigerators and the Defective Compressors, as detailed above.

274.    LG had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the CLRA in the course of their business. Specifically, LG owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Compressors in the Refrigerators because:

275.    Given LG's role in the design, manufacture, testing, and sale of Refrigerators and Defective Compressors it possessed exclusive access to and was in a superior position to know the true facts about the Defective Compressors;

276.    Given the Compressor Defect's hidden and technical nature, Plaintiffs and Class Members lack the expertise in refrigeration technology that would be necessary to discover the Compressor Defect on their own;

277.    LG knew that the Compressor Defect gave rise to serious concerns for the consumers who purchased the Refrigerators; and

278.    LG made, helped to make, or conspired to make incomplete representations about the performance and reliability of the Refrigerators, while purposefully withholding material facts about a known defect. Because LG volunteered to provide information about the Refrigerators that they marketed and offered for sale to consumers, LG had the duty to disclose the whole truth.

279.    LG's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Refrigerators had a properly-functioning and reliable cooling system. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable

consumers, including Plaintiffs and Class Members, about the functionality and reliability of the Refrigerators and/or the Defective Compressors installed in them, the quality of the Refrigerators, and the true value of the Refrigerators.

280.    LG intended for Plaintiffs and Class Members to rely on its misrepresentations, omissions, and concealment—which they did by purchasing the Refrigerators at the prices they paid believing that their purchase would not have a Compressor Defect that would affect the quality and reliability of the Refrigerators.

281.    LG's misrepresentations, concealments, omissions, and suppressions of material facts regarding the Compressor Defect and true characteristics of the Refrigerators were material to the decisions of Plaintiffs and Class Members to purchase those Refrigerators, as LG intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on LG's misrepresentations that the Refrigerators were properly-functioning and reliable in deciding to purchase the Refrigerators.

282.    Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that LG's representations were false and misleading, or otherwise learning the facts that LG had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel LG's deception on their own.

283.    Had they known the truth about the Compressor Defect, Plaintiffs and Class Members would not have purchased the Refrigerators, or would have paid significantly less for them.

284.    As a direct and proximate result of LG's deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a Refrigerator they otherwise would not have purchased or paying more than they otherwise would have as a result of

LG's actions and omissions alleged above—that first occurred at the time each Refrigerator was purchased.

285.    Plaintiffs and Class Members provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure pursuant to Cal. Civ. Code § 1782, as alleged in the section addressing LG's notice above.

286.    Pursuant to Cal. Civ. Code § 1780(a), Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the CLRA.

287.    Pursuant to California Civil Code § 1780(d), attached hereto as **Exhibits B-F** are signed affidavits from Plaintiffs that venue is appropriate in the District and that this action was filed in the proper place for trial.

### C.    COLORADO

**Colorado Count 1: Breach of Express Warranty (Colo. Rev. Stat. §§ 4-2-313 and 4-2.5-210)**

288.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

289.    Plaintiffs Ginger Cowan and Baraba Gardiner ("Plaintiffs" for purposes of the Colorado Counts) bring this count under Colorado law, individually and on behalf of the other members of the Colorado Subclasses against LG.

290.    For purposes of this count, members of the Colorado Subclass shall be referred to as "Class Members."

291.    The Refrigerators are "goods" under Colo. Rev. Stat. §§ 4-2-105(1) and 4-2.5-103(1)(h).

292.    LG is a "merchant" and "seller" of the Refrigerators under Colo. Rev. Stat. §§ 4-2-103(1)(d) and 4-2-104(1), § 4-2.5-103(1)(p), respectively.

293.    Plaintiffs and Class Members who purchased the Refrigerators in California are "buyers" under Color. Rev. Stat. §§ 4-2-103(1)(a) and 4-25.-103(1)(n).

294.    LG issued an express written warranty for each defective Refrigerator it sold, including that:

(a)    The Refrigerators would be free of defects in materials and workmanship at the time of sale; and

(b)    The Refrigerators were reliable and at a minimum would function properly during the warranty period.

295.    The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and Class Members' purchase of the Refrigerators.

296.    LG knowingly breached its warranty for the Refrigerators because:

(a)    The Refrigerators contain the Compressor Defect that renders the Refrigerators unable to perform their most basic function: cooling and preserving food and beverages; and

(b)    LG denied, concealed, and misrepresented the Compressor Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

297.    LG knew or should have known that the warranties were false and/or misleading. Specifically, LG was aware of the Compressor Defect in the Refrigerators, which made the Refrigerators inherently defective at the time that they were sold to Plaintiffs and Class Members.

298.    Plaintiffs and Class Members were exposed to LG's misrepresentations, and they had no way of discerning that LG's representations were false and misleading or otherwise learning the material facts that LG had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on LG's express warranties when purchasing their Refrigerators.

299.    Plaintiffs and Class Members timely provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing LG's notice, above.

300.    Alternatively, Plaintiffs and Class Members were excused from providing LG with notice and an opportunity to cure the breach, because it would have been futile.

301.    As a direct and proximate result of LG's breach of its express warranties, the Refrigerators were and are defective and the Compressor Defect was not remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase for the Refrigerators with a latent defect that would not be remedied.

### Colorado Count 2: Breach of Implied Warranty of Merchantability (Colo. Rev. Stat. §§ 4-2-314 and 4-2.5-212)

302.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

303.    Plaintiffs Ginger Cowan and Barbara Gardiner ("Plaintiffs" for purposes of the Colorado Counts) bring this count under Colorado law, individually and on behalf of the other members of the Colorado Subclasses against LG.

304.    For purposes of this count, members of the California Subclass shall be referred to as "Class Members."

305.    The Refrigerators are "goods" under Colo. Rev. Stat. §§ 4-2-105(1) and 4-2.5-103(1)(h).

306.    LG is a "merchant" and "seller" of the Refrigerators under Colo. Rev. Stat. §§ 4-2-103(1)(d) and 4-2-104(1), § 4-2.5-103(1)(p), respectively.

307.    Plaintiffs and Class Members who purchased the Refrigerators in California are "buyers" under Color. Rev. Stat. §§ 4-2-103(1)(a) and 4-25.-103(1)(n).

308.    California law conferred an implied warranty that the Refrigerators were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Colo. Rev. Stat. §§ 4-2-314 and 4-2.5-212.

309.    The Refrigerators are not merchantable, and as such LG breached their implied warranties, because at the time of sale and all times thereafter:

(a)    The Refrigerators would not pass without objection in the home appliance trade given the Compressor Defect;

(b)    The Compressor Defect renders the Refrigerators unfit for ordinary purposes;

(c)    The packaging and user manuals of the Refrigerators failed to disclose the Compressor Defect; and

(d)    The Refrigerators do not conform to their labeling, which represents that the Refrigerators are suitable for their intended use.

310.    Plaintiffs and Class Members timely provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing LG's notice, above.

311. Alternatively, Plaintiffs and Class Members were excused from providing LG with notice and an opportunity to cure the breach because it would have been futile.

312. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

**Colorado Count 3: Violations of Colorado Consumer Protection Act (Colo. Rev. Stat. § 6-1-101, *et seq.*)**

313. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

314. Plaintiffs Ginger Cowan and Barbara Gardiner ("Plaintiffs" for purposes of the Colorado Counts) bring this count under Colorado law, individually and on behalf of the other members of the Colorado Subclasses.

315. For purposes of this count, members of the Colorado Subclass shall be referred to as "Class Members."

316. LG, Plaintiffs, and Class Members are "persons" under Colo. Rev. Stat. § 6-1-102(6).

317. The Colorado Consumer Protection Act ("Colorado CPA") prohibits unfair, unconscionable, and deceptive acts or practices in the course of the person's business, vocation, or occupation. Colo. Rev. Stat. § 6-1-105.

318. LG's violations of the Colorado CPA occurred repeatedly in its trade or practice—including the design, manufacture, distribution, marketing, and sale of the Refrigerators.

319. LG, through its agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose

65

material facts regarding the reliability and performance of the Refrigerators and the Defective Compressors, as detailed above.

320.    LG had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Colorado CPA in the course of their business. Specifically, LG owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Compressors in the Refrigerators because:

> (a)    Given LG's role in the design, manufacture, testing, and sale of Refrigerators and Defective Compressors it possessed exclusive access to and was in a superior position to know the true facts about the Defective Compressors;

> (b)    Given the Compressor Defect's hidden and technical nature, Plaintiffs and Class Members lack the expertise in refrigeration technology that would be necessary to discover the Compressor Defect on their own;

> (c)    LG knew that the Compressor Defect gave rise to serious concerns for the consumers who purchased the Refrigerators; and

> (d)    LG made, helped to make, or conspired to make incomplete representations about the performance and reliability of the Refrigerators, while purposefully withholding material facts about a known defect. Because LG volunteered to provide information about the Refrigerators that they marketed and offered for sale to consumers, LG had the duty to disclose the whole truth.

321.    LG's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had

a tendency or capacity to mislead and create a false impression in consumers that the Refrigerators had a properly-functioning and reliable cooling system. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the functionality and reliability of the Refrigerators and/or the Defective Compressors installed in them, the quality of the Refrigerators, and the true value of the Refrigerators.

322.    LG intended for Plaintiffs and Class Members to rely on its misrepresentations, omissions, and concealment—which they did by purchasing the Refrigerators at the prices they paid believing that their purchase would not have a Compressor Defect that would affect the quality and reliability of the Refrigerators.

323.    LG's misrepresentations, concealments, omissions, and suppressions of material facts regarding the Compressor Defect and true characteristics of the Refrigerators were material to the decisions of Plaintiffs and Class Members to purchase those Refrigerators, as LG intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on LG's misrepresentations that the Refrigerators were properly-functioning and reliable in deciding to purchase the Refrigerators.

324.    Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that LG's representations were false and misleading, or otherwise learning the facts that LG had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel LG's deception on their own.

325.    Had they known the truth about the Compressor Defect, Plaintiffs and Class Members would not have purchased the Refrigerators, or would have paid significantly less for them.

326.    As a direct and proximate result of LG's deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a Refrigerator they otherwise would not have purchased or paying more than they otherwise would have as a result of LG's actions and omissions alleged above—that first occurred at the time each Refrigerator was purchased.

327.    Pursuant to Colo. Rev. Stat. § 6-1-113, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the Colorado CPA  With respect to those LG, Plaintiffs and Class Members seek an order enjoining their unfair or deceptive acts or practices, and any other just and proper equitable relief available under the Colorado CPA.

### D.    FLORIDA

**Florida Count 1: Breach of Express Warranty (Fla. Stat. §§ 672.313 and 680.21)**

328.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

329.    Plaintiffs Steven Borden and Bert Tavary ("Plaintiffs" for purposes of the Florida Counts) bring this count under Florida law, individually and on behalf of the other members of the Florida Subclasses against LG.

330.    For purposes of this count, members of the Florida Subclass shall be referred to as "Class Members."

331.    The Refrigerators are "goods" under Fla. Stat. §§ 672.105(1) and 680.1031(1)(h).

332.    LG is a "merchant" and "seller" of the Refrigerators under Cal. Com. Code §§ 672.104(1) and 680.1031(3)(k), § 672.103(1)(d), and § 680.1031(1)(p), respectively.

333.    Plaintiffs and Class Members who purchased the Refrigerators in Florida are "buyers" under Fla. Stat. §§ 672.103(1)(a) and 680.1031(1)(n).

334.    LG issued an express written warranty for each defective Refrigerator it sold, including that:

(a)    The Refrigerators would be free of defects in materials and workmanship at the time of sale; and

(b)    The Refrigerators were reliable and at a minimum would function properly during the warranty period.

335.    The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and Class Members' purchase of the Refrigerators.

336.    LG knowingly breached its warranty for the Refrigerators because:

(a)    The Refrigerators contain the Compressor Defect that renders the Refrigerators unable to perform their most basic function: cooling and preserving food and beverages; and

(b)    LG denied, concealed, and misrepresented the Compressor Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

337.    LG knew or should have known that the warranties were false and/or misleading. Specifically, LG was aware of the Compressor Defect in the Refrigerators, which made the Refrigerators inherently defective at the time that they were sold to Plaintiffs and Class Members.

338.    Plaintiffs and Class Members were exposed to LG's misrepresentations, and they had no way of discerning that LG's representations were false and misleading or otherwise

learning the material facts that LG had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on LG's express warranties when purchasing their Refrigerators.

339.    Plaintiffs and Class Members timely provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing LG's notice, above.

340.    Alternatively, Plaintiffs and Class Members were excused from providing LG with notice and an opportunity to cure the breach, because it would have been futile.

341.    As a direct and proximate result of LG's breach of its express warranties, the Refrigerators were and are defective and the Compressor Defect was not remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase for the Refrigerators with a latent defect that would not be remedied.

**Florida Count 2: Breach of Implied Warranty of Merchantability (Fla. Stat. §§ 672.314 and 680.212)**

342.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

343.    Plaintiffs Steven Borden and Bert Tavary ("Plaintiffs" for purposes of the Florida Counts) bring this count under Florida law, individually and on behalf of the other members of the Florida Subclasses against LG.

344.    For purposes of this count, members of the Florida Subclass shall be referred to as "Class Members."

345.    The Refrigerators are "goods" under Fla. Stat. §§ 672.105(1) and 680.1031(1)(h).

346.    LG is a "merchant" and "seller" of the Refrigerators under Cal. Com. Code §§ 672.104(1) and 680.1031(3)(k), § 672.103(1)(d), and § 680.1031(1)(p), respectively.

347.    Plaintiffs and Class Members who purchased the Refrigerators in Florida are "buyers" under Fla. Stat. §§ 672.103(1)(a) and 680.1031(1)(n).

348.    Florida law conferred an implied warranty that the Refrigerators were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Fla. Stat. §§ 672.314 and 680.212.

349.    The Refrigerators are not merchantable, and as such LG breached their implied warranties, because at the time of sale and all times thereafter:

> (a)    The Refrigerators would not pass without objection in the home appliance trade given the Compressor Defect;
>
> (b)    The Compressor Defect renders the Refrigerators unfit for ordinary purposes;
>
> (c)    The packaging and user manuals of the Refrigerators failed to disclose the Compressor Defect; and
>
> (d)    The Refrigerators do not conform to their labeling, which represents that the Refrigerators are suitable for their intended use.

350.    Plaintiffs and Class Members timely provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing LG's notice, above.

351.    Alternatively, Plaintiffs and Class Members were excused from providing LG with notice and an opportunity to cure the breach because it would have been futile.

352.    Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

**Florida Count 3: Violations of the Florida Deceptive & Unfair Trade Practices Act (Fla. Stat. § 501.201, *et seq.*)**

353.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

354.    Plaintiffs Steven Borden and Bert Tavary ("Plaintiffs" for purposes of the Florida Counts) bring this count under Florida law, individually and on behalf of the other members of the Florida Subclasses against LG.

355.    For purposes of this count, members of the Florida Subclass shall be referred to as "Class Members."

356.    Plaintiffs and Class Members are "consumers" under Fla. Stat. § 501.203(7) because they purchased the Refrigerators primarily for personal, family, or household use.

357.    LG were and are engaged in "trade or commerce" under the meaning of Fla. Stat. § 501.203(8).

358.    The Florida Unfair and Deceptive Trade Practices Act ("Florida UDTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

359.    LG's violations of the Florida UDTPA occurred repeatedly in its trade or practice—including the design, manufacture, distribution, marketing, and sale of the Refrigerators.

360.    LG, through its agents, employees, and/or subsidiaries, violated the Florida UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability and performance of the Refrigerators and the Defective Compressors, as detailed above.

361.    LG had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Florida UDTPA in the course of their business. Specifically, LG

owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Compressors in the Refrigerators because:

    (a)    Given LG's role in the design, manufacture, testing, and sale of Refrigerators and Defective Compressors it possessed exclusive access to and was in a superior position to know the true facts about the Defective Compressors;

    (b)    Given the Compressor Defect's hidden and technical nature, Plaintiffs and Class Members lack the expertise in refrigeration technology that would be necessary to discover the Compressor Defect on their own;

    (c)    LG knew that the Compressor Defect gave rise to serious concerns for the consumers who purchased the Refrigerators; and

    (d)    LG made, helped to make, or conspired to make incomplete representations about the performance and reliability of the Refrigerators, while purposefully withholding material facts about a known defect. Because LG volunteered to provide information about the Refrigerators that they marketed and offered for sale to consumers, LG had the duty to disclose the whole truth.

362. LG's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Refrigerators had a properly-functioning and reliable cooling system. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the functionality and reliability of the

Refrigerators and/or the Defective Compressors installed in them, the quality of the Refrigerators, and the true value of the Refrigerators.

363.    LG intended for Plaintiffs and Class Members to rely on its misrepresentations, omissions, and concealment—which they did by purchasing the Refrigerators at the prices they paid believing that their purchase would not have a Compressor Defect that would affect the quality and reliability of the Refrigerators.

364.    LG's misrepresentations, concealments, omissions, and suppressions of material facts regarding the Compressor Defect and true characteristics of the Refrigerators were material to the decisions of Plaintiffs and Class Members to purchase those Refrigerators, as LG intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on LG's misrepresentations that the Refrigerators were properly-functioning and reliable in deciding to purchase the Refrigerators.

365.    Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that LG's representations were false and misleading, or otherwise learning the facts that LG had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel LG's deception on their own.

366.    Had they known the truth about the Compressor Defect, Plaintiffs and Class Members would not have purchased the Refrigerators, or would have paid significantly less for them.

367.    As a direct and proximate result of LG's deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a Refrigerator they otherwise would not have purchased or paying more than they otherwise would have as a result of

LG's actions and omissions alleged above—that first occurred at the time each Refrigerator was purchased.

368.    Pursuant to Fla. Stat. § 501.211, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the Florida UDTPA.

### E.    GEORGIA

### Georgia Count 1: Breach of Express Warranty (Ga. Code. Ann. §§ 11-2-313 and 11-2A-210)

369.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

370.    Plaintiffs Edwina Frame and Christy Barnett ("Plaintiffs" for purposes of the Georgia Counts) bring this count under Georgia law, individually and on behalf of the other members of the Georgia Subclasses against LG.

371.    For purposes of this count, members of the Georgia Subclass shall be referred to as "Class Members."

372.    The Refrigerators are "goods" under Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

373.    LG is a "merchant" and "seller" of the Refrigerators under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), § 11-2-103(1)(d) and § 11-2A-103(1)(p), respectively.

374.    Plaintiffs and Class Members who purchased the Refrigerators in Georgia are "buyers" under Ga. Code Ann. §§ 11-2-103(1)(a) and 11-2A-103(1)(n).

375.    LG issued an express written warranty for each defective Refrigerator it sold, including that:

      (a)    The Refrigerators would be free of defects in materials and workmanship at the time of sale; and

      (b)    The Refrigerators were reliable and at a minimum would function properly during the warranty period.

376.    The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and Class Members' purchase of the Refrigerators.

377.    LG knowingly breached its warranty for the Refrigerators because:

      (a)    The Refrigerators contain the Compressor Defect that renders the Refrigerators unable to perform their most basic function: cooling and preserving food and beverages; and

      (b)    LG denied, concealed, and misrepresented the Compressor Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

378.    LG knew or should have known that the warranties were false and/or misleading. Specifically, LG was aware of the Compressor Defect in the Refrigerators, which made the Refrigerators inherently defective at the time that they were sold to Plaintiffs and Class Members.

379.    Plaintiffs and Class Members were exposed to LG's misrepresentations, and they had no way of discerning that LG's representations were false and misleading or otherwise learning the material facts that LG had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on LG's express warranties when purchasing their Refrigerators.

380.    Plaintiffs and Class Members timely provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing LG's notice, above.

381.    Alternatively, Plaintiffs and Class Members were excused from providing LG with notice and an opportunity to cure the breach, because it would have been futile.

382.    As a direct and proximate result of LG's breach of its express warranties, the Refrigerators were and are defective and the Compressor Defect was not remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase for the Refrigerators with a latent defect that would not be remedied.

**Georgia Count 2: Breach of Implied Warranty of Merchantability (Ga. Code Ann. §§ 11-2-314 and 11-2A-212)**

383.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

384.    Plaintiffs Edwina Frame and Christy Barnett ("Plaintiffs" for purposes of the Georgia Counts) bring this count under Georgia law, individually and on behalf of the other members of the Georgia Subclasses against LG.

385.    For purposes of this count, members of the Georgia Subclass shall be referred to as "Class Members."

386.    The Refrigerators are "goods" under Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

387.    LG is a "merchant" and "seller" of the Refrigerators under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), § 11-2-103(1)(d) and § 11-2A-103(1)(p), respectively.

388.    Georgia law conferred an implied warranty that the Refrigerators were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Cal. Com. Code §§ 2314 and 10212.

389.    Plaintiffs and Class Members who purchased the Refrigerators in Georgia are "buyers" under Ga. Code Ann. §§ 11- 2-314 and 11-2A-212.

390.    The Refrigerators are not merchantable, and as such LG breached their implied warranties, because at the time of sale and all times thereafter:

      (a)    The Refrigerators would not pass without objection in the home appliance trade given the Compressor Defect;

      (b)    The Compressor Defect renders the Refrigerators unfit for ordinary purposes;

      (c)    The packaging and user manuals of the Refrigerators failed to disclose the Compressor Defect; and

      (d)    The Refrigerators do not conform to their labeling, which represents that the Refrigerators are suitable for their intended use.

391.    Plaintiffs and Class Members timely provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing LG's notice, above.

392.    Alternatively, Plaintiffs and Class Members were excused from providing LG with notice and an opportunity to cure the breach because it would have been futile.

393.    Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

**Georgia Count 3: Violations of the Georgia Fair Business Practices Act (Ga. Code Ann. §§ 10-1-390,** *et seq.***)**

394.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

395. Plaintiffs Edwina Frame and Christy Barnett ("Plaintiffs" for purposes of the Georgia Counts) bring this count under Georgia law, individually and on behalf of the other members of the Georgia Subclasses against LG.

396. For purposes of this count, members of the Georgia Subclass shall be referred to as "Class Members."

397. LG, Plaintiffs and Class Members are "persons" under Ga. Code Ann. § 10-1-392(24).

398. Plaintiffs are "consumers" engaged in "consumer transactions" under Ga. Code Ann. § 10-1-293(6) and (10) because they purchased the Refrigerators primarily for personal, family, or household use.

399. LG's sale of the Refrigerators is "trade" and "commerce" under Ga. Code Ann. § 10-1-293(28).

400. The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful. Ga. Code. Ann. § 10-1-393(a).

401. LG's violations of the Georgia FBPA occurred repeatedly in its trade or practice—including the design, manufacture, distribution, marketing, and sale of the Refrigerators.

402. LG, through its agents, employees, and/or subsidiaries, violated the Georgia FBPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability and performance of the Refrigerators and the Defective Compressors, as detailed above.

403. LG had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Georgia FBPA in the course of their business. Specifically, LG owed

Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Compressors in the Refrigerators because:

> (a)    Given LG's role in the design, manufacture, testing, and sale of Refrigerators and Defective Compressors it possessed exclusive access to and was in a superior position to know the true facts about the Defective Compressors;

> (b)    Given the Compressor Defect's hidden and technical nature, Plaintiffs and Class Members lack the expertise in refrigeration technology that would be necessary to discover the Compressor Defect on their own;

> (c)    LG knew that the Compressor Defect gave rise to serious concerns for the consumers who purchased the Refrigerators; and

> (d)    LG made, helped to make, or conspired to make incomplete representations about the performance and reliability of the Refrigerators, while purposefully withholding material facts about a known defect. Because LG volunteered to provide information about the Refrigerators that they marketed and offered for sale to consumers, LG had the duty to disclose the whole truth.

404.    LG's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Refrigerators had a properly-functioning and reliable cooling system. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the functionality and reliability of the

Refrigerators and/or the Defective Compressors installed in them, the quality of the Refrigerators, and the true value of the Refrigerators.

405.    LG intended for Plaintiffs and Class Members to rely on its misrepresentations, omissions, and concealment—which they did by purchasing the Refrigerators at the prices they paid believing that their purchase would not have a Compressor Defect that would affect the quality and reliability of the Refrigerators.

406.    LG's misrepresentations, concealments, omissions, and suppressions of material facts regarding the Compressor Defect and true characteristics of the Refrigerators were material to the decisions of Plaintiffs and Class Members to purchase those Refrigerators, as LG intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on LG's misrepresentations that the Refrigerators were properly-functioning and reliable in deciding to purchase the Refrigerators.

407.    Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that LG's representations were false and misleading, or otherwise learning the facts that LG had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel LG's deception on their own.

408.    Had they known the truth about the Compressor Defect, Plaintiffs and Class Members would not have purchased the Refrigerators, or would have paid significantly less for them.

409.    As a direct and proximate result of LG's deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a Refrigerator they otherwise would not have purchased or paying more than they otherwise would have as a result of

LG's actions and omissions alleged above—that first occurred at the time each Refrigerator was purchased.

410.    Plaintiffs and Class Members timely provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing LG's notice, above. Because LG failed to adequately remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Plaintiffs and Class Members are entitled.

411.    Alternatively, Plaintiffs and Class Members were excused from providing the LG with notice and an opportunity to cure the Compressor Defect, because it would have been futile.

412.    Pursuant to Ga. Code Ann. § 10-1-399, Plaintiffs and Class Members seek an order enjoining LG's unfair or deceptive acts or practices and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the Georgia FBPA.

**F.    ILLINOIS**

**Illinois Count 1: Breach of Express Warranty (810 Ill. Comp. Stat. 5/2-313 and 5/2A-210)**

413.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

414.    Plaintiffs Amy Weisberg, Kerry McLaren, Irma Armour, Kathleen Johnson, and Valeria Caldwell ("Plaintiffs" for purposes of the Illinois Counts) bring this count under Illinois law, individually and on behalf of the other members of the Illinois Subclasses against LG.

415.    For purposes of this count, members of the Illinois Subclass shall be referred to as "Class Members."

416.    LG is and was at all relevant times a "merchant" with respect to refrigerators under 810 ILCS 5/2-104(1) and 5/2A- 103(3), and a "seller" of refrigerators under 5/2-103(1)(d).

417.    All Class members who purchased Refrigerators in Illinois are "buyers" within the meaning of 810 ILCS 5/2-103(1)(a).

418.    The Refrigerators are and were at all relevant times "goods" within the meaning of 810 ILCS 5/2-105(1) and 5/2A-103(1)(h).

419.    LG issued an express written warranty for each defective Refrigerator it sold, including that:

      (a)    The Refrigerators would be free of defects in materials and workmanship at the time of sale; and

      (b)    The Refrigerators were reliable and at a minimum would function properly during the warranty period.

420.    The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and Class Members' purchase of the Refrigerators.

421.    LG knowingly breached its warranty for the Refrigerators because:

      (a)    The Refrigerators contain the Compressor Defect that renders the Refrigerators unable to perform their most basic function: cooling and preserving food and beverages; and

      (b)    LG denied, concealed, and misrepresented the Compressor Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

422.    LG knew or should have known that the warranties were false and/or misleading. Specifically, LG was aware of the Compressor Defect in the Refrigerators, which made the Refrigerators inherently defective at the time that they were sold to Plaintiffs and Class Members.

423.    Plaintiffs and Class Members were exposed to LG's misrepresentations, and they had no way of discerning that LG's representations were false and misleading or otherwise

learning the material facts that LG had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on LG's express warranties when purchasing their Refrigerators.

424.    Plaintiffs and Class Members timely provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing LG's notice, above.

425.    Alternatively, Plaintiffs and Class Members were excused from providing LG with notice and an opportunity to cure the breach, because it would have been futile.

426.    As a direct and proximate result of LG's breach of its express warranties, the Refrigerators were and are defective and the Compressor Defect was not remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase for the Refrigerators with a latent defect that would not be remedied.

**Illinois Count 2: Breach of Implied Warranty of Merchantability (810 Ill. Comp. Stat. 5/2-314 and 5/2A-212)**

427.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

428.    Plaintiffs Amy Weisberg, Kerry McLaren, Irma Armour, Kathleen Johnson, and Valeria Caldwell ("Plaintiffs" for purposes of the Illinois Counts) bring this count under Illinois law, individually and on behalf of the other members of the Illinois Subclasses against LG.

429.    For purposes of this count, members of the Illinois Subclass shall be referred to as "Class Members."

430.    A warranty that the Refrigerators were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to 810 ILCS 5/2-314 and 5/2A-212.

431.    LG is and was at all relevant times a "merchant" with respect to refrigerators under 810 ILCS 5/2-104(1) and 5/2A-103(3), and a "seller" of refrigerators under 5/2-103(1)(d).

432.    All Class Members who purchased Refrigerators in Illinois are "buyers" within the meaning of 810 ILCS 5/2-103(1)(a).

433.    The Refrigerators are and were at all relevant times "goods" within the meaning of 810 ILCS 5/2-105(1) and 5/2A-103(1)(h).

434.    The Refrigerators are not merchantable, and as such LG breached their implied warranties, because at the time of sale and all times thereafter:

(a)    The Refrigerators would not pass without objection in the home appliance trade given the Compressor Defect;

(b)    The Compressor Defect renders the Refrigerators unfit for ordinary purposes;

(c)    The packaging and user manuals of the Refrigerators failed to disclose the Compressor Defect; and

(d)    The Refrigerators do not conform to their labeling, which represents that the Refrigerators are suitable for their intended use.

435.    Plaintiffs and Class Members timely provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing LG's notice, above.

436.    Alternatively, Plaintiffs and Class Members were excused from providing LG with notice and an opportunity to cure the breach because it would have been futile.

437.    Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

### Illinois Count 3: Violations of Illinois Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. 505/1, *et seq.*)

438.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

439.    Plaintiffs Amy Weisberg, Kerry McLaren, Irma Armour, Kathleen Johnson, and Valeria Caldwell ("Plaintiffs" for purposes of the Illinois Counts) bring this count under Illinois law, individually and on behalf of the other members of the Illinois Subclasses against LG.

440.    For purposes of this count, members of the Illinois Subclass shall be referred to as "Class Members."

441.    LG, Plaintiffs, and the Class Members are "persons" within the meaning of 815 ILCS 505/1(c).

442.    The Plaintiffs and Class Members are "consumers" within the meaning of 815 ILCS 505/1(e).

443.    The Refrigerators are "merchandise" within the meaning of 815 ILCS 505/1(b).

444.    LG were and are engaged in "trade" and "commerce" within the meaning of 815 ILCS 505/1(f).

445.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices[.]" 815 ILCS 505/2.

446.    LG's violations of the Illinois CFA occurred repeatedly in its trade or practice— including the design, manufacture, distribution, marketing, and sale of the Refrigerators.

447.    LG, through its agents, employees, and/or subsidiaries, violated the Illinois CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability and performance of the Refrigerators and the Defective Compressors, as detailed above.

448.    LG had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Illinois CFA in the course of their business. Specifically, LG owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Compressors in the Refrigerators because:

(a)    Given LG's role in the design, manufacture, testing, and sale of Refrigerators and Defective Compressors it possessed exclusive access to and was in a superior position to know the true facts about the Defective Compressors;

(b)    Given the Compressor Defect's hidden and technical nature, Plaintiffs and Class Members lack the expertise in refrigeration technology that would be necessary to discover the Compressor Defect on their own;

(c)    LG knew that the Compressor Defect gave rise to serious concerns for the consumers who purchased the Refrigerators; and

(d)    LG made, helped to make, or conspired to make incomplete representations about the performance and reliability of the Refrigerators, while purposefully withholding material facts about a known defect. Because LG volunteered to provide information about the Refrigerators that they marketed and offered for sale to consumers, LG had the duty to disclose the whole truth.

449.    LG's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Refrigerators had a properly-functioning and reliable cooling system. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the functionality and reliability of the Refrigerators and/or the Defective Compressors installed in them, the quality of the Refrigerators, and the true value of the Refrigerators.

450.    LG intended for Plaintiffs and Class Members to rely on its misrepresentations, omissions, and concealment—which they did by purchasing the Refrigerators at the prices they paid believing that their purchase would not have a Compressor Defect that would affect the quality and reliability of the Refrigerators.

451.    LG's misrepresentations, concealments, omissions, and suppressions of material facts regarding the Compressor Defect and true characteristics of the Refrigerators were material to the decisions of Plaintiffs and Class Members to purchase those Refrigerators, as LG intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on LG's misrepresentations that the Refrigerators were properly-functioning and reliable in deciding to purchase the Refrigerators.

452.    Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that LG's representations were false and misleading, or otherwise learning the facts that LG had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel LG's deception on their own.

453.    Had they known the truth about the Compressor Defect, Plaintiffs and Class Members would not have purchased the Refrigerators, or would have paid significantly less for them.

454.    As a direct and proximate result of LG's deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a Refrigerator they otherwise would not have purchased or paying more than they otherwise would have as a result of LG's actions and omissions alleged above—that first occurred at the time each Refrigerator was purchased.

455.    Plaintiffs and Class Members timely provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing LG's notice, above. Because LG failed to adequately remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Plaintiffs and Class Members are entitled.

456.    Alternatively, Plaintiffs and Class Members were excused from providing the LG with notice and an opportunity to cure the Compressor Defect, because it would have been futile.

457.    Pursuant to 815 ILCS 505/10a, Plaintiffs and Class Members seek an order enjoining LG's unfair or deceptive acts or practices and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the Illinois CFA.

### G.    MICHIGAN

### Michigan Count 1: Breach of Express Warranty (Mich. Comp. Laws §§ 440.2313 and 440.2860)

458.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

459.    Plaintiffs Trenton Mauk and Charley Mills ("Plaintiffs" for purposes of the Michigan Counts) bring this count under Michigan law, individually and on behalf of the other members of the Michigan Subclasses against LG.

460.    For purposes of this count, members of the Michigan Subclass shall be referred to as "Class Members."

461.    LG is and was at all relevant times a "merchant" with respect to refrigerators under Mich. Comp. Laws §§ 440.2104(1) and 440.2803(3), and a "seller" of refrigerators under § 440.2103(1)(c).

462.    All Class members who purchased Refrigerators in Michigan are "buyers" within the meaning of Mich. Comp. Laws § 440.2103(1)(a).

463.    The Refrigerators are and were at all relevant times "goods" within the meaning of Mich. Comp. Laws §§ 440.2105(1) and 4400.2803(1)(h).

464.    LG issued an express written warranty for each defective Refrigerator it sold, including that:

(a)    The Refrigerators would be free of defects in materials and workmanship at the time of sale; and

(b)    The Refrigerators were reliable and at a minimum would function properly during the warranty period.

465.    The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and Class Members' purchase of the Refrigerators.

466.    LG knowingly breached its warranty for the Refrigerators because:

(a)    The Refrigerators contain the Compressor Defect that renders the Refrigerators unable to perform their most basic function: cooling and preserving food and beverages; and

(b)    LG denied, concealed, and misrepresented the Compressor Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

467.    LG knew or should have known that the warranties were false and/or misleading. Specifically, LG was aware of the Compressor Defect in the Refrigerators, which made the Refrigerators inherently defective at the time that they were sold to Plaintiffs and Class Members.

468.    Plaintiffs and Class Members were exposed to LG's misrepresentations, and they had no way of discerning that LG's representations were false and misleading or otherwise learning the material facts that LG had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on LG's express warranties when purchasing their Refrigerators.

469.    Plaintiffs and Class Members timely provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing LG's notice above.

470.    Alternatively, Plaintiffs and Class Members were excused from providing LG with notice and an opportunity to cure the breach, because it would have been futile.

471.    As a direct and proximate result of LG's breach of its express warranties, the Refrigerators were and are defective and the Compressor Defect was not remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase for the Refrigerators with a latent defect that would not be remedied.

**Michigan Count 2: Breach of Implied Warranty of Merchantability (Mich. Comp. Laws §§ 440.2314 and 440.2862)**

472.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

473.    Plaintiffs Trenton Mauk and Charley Mills ("Plaintiffs" for purposes of the Michigan Counts) bring this count under Michigan law, individually and on behalf of the other members of the Michigan Subclasses against LG.

474.    For purposes of this count, members of the Michigan Subclass shall be referred to as "Class Members."

475.    A warranty that the Refrigerators were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Mich. Comp. Laws §§ 440.2314 and 440.2862.

476.    LG is and was at all relevant times a "merchant" with respect to refrigerators under Mich. Comp. Laws §§ 440.2104(1) and 440.2803(3), and a "seller" of refrigerators under § 440.2103(1)(c).

477.    All Class Members who purchased Refrigerators in Michigan are "buyers" within the meaning of Mich. Comp. Laws § 440.2103(1)(a).

478.    The Refrigerators are and were at all relevant times "goods" within the meaning of Mich. Comp. Laws §§ 440.2105(1) and 4400.2803(1)(h).

479.    The Refrigerators are not merchantable, and as such LG breached their implied warranties, because at the time of sale and all times thereafter:

(a)    The Refrigerators would not pass without objection in the home appliance trade given the Compressor Defect;

(b)     The Compressor Defect renders the Refrigerators unfit for ordinary purposes;

(c)     The packaging and user manuals of the Refrigerators failed to disclose the Compressor Defect; and

(d)     The Refrigerators do not conform to their labeling, which represents that the Refrigerators are suitable for their intended use.

480.    Plaintiffs and Class Members timely provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing LG's notice above.

481.    Alternatively, Plaintiffs and Class Members were excused from providing LG with notice and an opportunity to cure the breach because it would have been futile.

482.    Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

**Michigan Count 3: Violations of Michigan's Consumer Protection Act (Mich. Comp. Laws § 445.901, *et seq.*)**

483.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

484.    Plaintiffs Trenton Mauk and Charley Mills ("Plaintiffs" for purposes of the Michigan Counts) bring this count under Michigan law, individually and on behalf of the other members of the Michigan Subclasses against LG.

485.    For purposes of this count, members of the Michigan Subclass shall be referred to as "Class Members."

486.    LG, Plaintiffs, and Class Members are "persons" within the meaning of Mich. Comp. Laws § 445.902(1)(d).

487.    LG were and are engaged in "trade" or "commerce" within the meaning of Mich. Comp. Laws § 445.902(1)(g).

488.    The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce[.]" Mich. Comp. Laws § 445.903(1).

489.    LG, through its agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability and performance of the Refrigerators and the Defective Compressors, as detailed above.

490.    LG had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Michigan CPA in the course of their business. Specifically, LG owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Compressors in the Refrigerators because:

    (a)    Given LG's role in the design, manufacture, testing, and sale of Refrigerators and Defective Compressors it possessed exclusive access to and was in a superior position to know the true facts about the Defective Compressors;

    (b)    Given the Compressor Defect's hidden and technical nature, Plaintiffs and Class Members lack the expertise in refrigeration technology that would be necessary to discover the Compressor Defect on their own;

(c)    LG knew that the Compressor Defect gave rise to serious concerns for the consumers who purchased the Refrigerators; and

(d)    LG made, helped to make, or conspired to make incomplete representations about the performance and reliability of the Refrigerators, while purposefully withholding material facts about a known defect. Because LG volunteered to provide information about the Refrigerators that they marketed and offered for sale to consumers, LG had the duty to disclose the whole truth.

491.    LG's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Refrigerators had a properly-functioning and reliable cooling system. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the functionality and reliability of the Refrigerators and/or the Defective Compressors installed in them, the quality of the Refrigerators, and the true value of the Refrigerators.

492.    LG intended for Plaintiffs and Class Members to rely on its misrepresentations, omissions, and concealment—which they did by purchasing the Refrigerators at the prices they paid believing that their purchase would not have a Compressor Defect that would affect the quality and reliability of the Refrigerators.

493.    LG's misrepresentations, concealments, omissions, and suppressions of material facts regarding the Compressor Defect and true characteristics of the Refrigerators were material to the decisions of Plaintiffs and Class Members to purchase those Refrigerators, as LG intended.

Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on LG's misrepresentations that the Refrigerators were properly-functioning and reliable in deciding to purchase the Refrigerators.

494.    Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that LG's representations were false and misleading, or otherwise learning the facts that LG had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel LG's deception on their own.

495.    Had they known the truth about the Compressor Defect, Plaintiffs and Class Members would not have purchased the Refrigerators, or would have paid significantly less for them.

496.    As a direct and proximate result of LG's deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a Refrigerator they otherwise would not have purchased or paying more than they otherwise would have as a result of LG's actions and omissions alleged above—that first occurred at the time each Refrigerator was purchased.

497.    Pursuant to Mich. Comp. Laws § 445.911, Plaintiffs and Class Members seek an order enjoining LG's unfair and/or deceptive acts or practices, any such orders or judgments as may be necessary to restore to them any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the Michigan CPA.

### H.    NEVADA

**Nevada Count 1: Breach of Express Warranty (Nev. Rev. Stat. §§ 104.2313 and 104A.2210)**

498.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

499. Plaintiffs Sue Hopfensitz and Delion Cummings ("Plaintiffs" for purposes of the Nevada Counts) bring this count under Nevada law, individually and on behalf of the other members of the Nevada Subclasses against LG.

500. For purposes of this count, members of the Nevada Subclasses shall be referred to as "Class Members."

501. The Refrigerators are "goods" under Nev. Rev. Stat. §§ 104.2105(1) and 104A.2103(1)(h).

502. LG is a "merchant" of the Refrigerators under Nev. Rev. Stat. §§ 104.2104(1) and 104A.2103(3), and a "seller" under § 104.2103(1)(c).

503. Plaintiffs and Class Members who purchased the Refrigerators in Nevada are "buyers" under Nev. Rev. Stat. § 104.2103(1)(a).

504. LG issued an express written warranty for each defective Refrigerator it sold, including that:

    (a) The Refrigerators would be free of defects in materials and workmanship at the time of sale; and

    (b) The Refrigerators were reliable and at a minimum would function properly during the warranty period.

505. The warranties listed above formed the basis of the bargain with regard to Plaintiffs and Class Members' purchase of the Refrigerators.

506. LG knowingly breached its warranty for the Refrigerators because:

    (a) The Refrigerators contain the Compressor Defect that renders the Refrigerators unable to perform their most basic function: cooling and preserving food and beverages; and

(b)    LG denied, concealed, and misrepresented the Compressor Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

507.    LG knew or should have known that the warranties were false and/or misleading. Specifically, LG was aware of the Compressor Defect in the Refrigerators, which made the Refrigerators inherently defective at the time that they were sold to Plaintiffs and Class Members.

508.    Plaintiffs and Class Members were exposed to LG's misrepresentations, and they had no way of discerning that LG's representations were false and misleading or otherwise learning the material facts that LG had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on LG's express warranties when purchasing their Refrigerators.

509.    Plaintiffs and Class Members timely provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing LG's notice above.

510.    Alternatively, Plaintiffs and Class Members were excused from providing LG with notice and an opportunity to cure the breach, because it would have been futile.

511.    As a direct and proximate result of LG's breach of its express warranties, the Refrigerators were and are defective and the Compressor Defect was not remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase for the Refrigerators with a latent defect that would not be remedied.

**Nevada Count 2: Breach of Implied Warranty of Merchantability (Nev. Rev. Stat. §§ 104.2314 and 104A.2212)**

512.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

513.    Plaintiffs Sue Hopfensitz and Delion Cummings ("Plaintiffs" for purposes of the Nevada Counts) bring this count under Nevada law, individually and on behalf of the other members of the Nevada Subclasses against LG.

514.    For purposes of this count, members of the Nevada Subclasses shall be referred to as "Class Members."

515.    The Refrigerators are "goods" under Nev. Rev. Stat. §§ 104.2105(1) and 104A.2103(1)(h).

516.    LG is a "merchant" of the Refrigerators under Nev. Rev. Stat. §§ 104.2104(1) and 104A.2103(3), and a "seller" under § 104.2103(1)(c).

517.    Plaintiffs and Class Members who purchased the Refrigerators in Nevada are "buyers" under Nev. Rev. Stat. § 104.2103(1)(a).

518.    Nevada law conferred an implied warranty that the Refrigerators were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Nev. Rev. Stat. §§ 104.2314 and 104A.2212.

519.    The Refrigerators are not merchantable, and as such LG breached their implied warranties, because at the time of sale and all times thereafter:

(a)    The Refrigerators would not pass without objection in the home appliance trade given the Compressor Defect;

(b)    The Compressor Defect renders the Refrigerators unfit for ordinary purposes;

(c)    The packaging and user manuals of the Refrigerators failed to disclose the Compressor Defect; and

(d)    The Refrigerators do not conform to their labeling, which represents that the Refrigerators are suitable for their intended use.

520.    Plaintiffs and Class Members timely provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing LG's notice above.

521.    Alternatively, Plaintiffs and Class Members were excused from providing LG with notice and an opportunity to cure the breach because it would have been futile.

522.    Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

### Nevada Count 3: Violation of the Nevada Consumer Practices Act (Nev. Rev. Stat. § 598.0903, *et seq.*)

523.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

524.    Plaintiffs Sue Hopfensitz and Delion Cummings ("Plaintiffs" for purposes of the Nevada Counts) bring this count under Nevada law, individually and on behalf of the other members of the Nevada Subclasses against LG.

525.    For purposes of this count, members of the Nevada Subclasses shall be referred to as "Class Members."

526.    The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), Nev. Rev. Stat. § 598.0903, *et. seq.* prohibits the use of deceptive trade practices in the course of business and occupation.

527.    In the course of their business, LG, through its agents, employees, and/or subsidiaries, violated the Nevada DTPA by knowingly and intentionally misrepresenting,

omitting, concealing, and/or failing to disclose material facts regarding the reliability and performance of the Refrigerators and the Defective Compressors, as detailed above.

528.    LG had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Nevada DTPA in the course of their business. Specifically, LG owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Compressors in the Refrigerators because:

(a)    Given LG's role in the design, manufacture, testing, and sale of Refrigerators and Defective Compressors it possessed exclusive access to and was in a superior position to know the true facts about the Defective Compressors;

(b)    Given the Compressor Defect's hidden and technical nature, Plaintiffs and Class Members lack the expertise in refrigeration technology that would be necessary to discover the Compressor Defect on their own;

(c)    LG knew that the Compressor Defect gave rise to serious concerns for the consumers who purchased the Refrigerators; and

(d)    LG made, helped to make, or conspired to make incomplete representations about the performance and reliability of the Refrigerators, while purposefully withholding material facts about a known defect. Because LG volunteered to provide information about the Refrigerators that they marketed and offered for sale to consumers, LG had the duty to disclose the whole truth.

529.    By misrepresenting the Refrigerators as properly functioning and reliable and the compressors installed in them as properly functioning and free from defects, and/or by failing to

disclose and actively concealing the dangers and risk posed by the Compressor Defect to consumers, LG engaged in one or more of the unfair or deceptive business practices in violation of the Nevada DTPA:

> (a)     Representing that the Refrigerators and/or the Defective Compressors installed in them have certifications which they do not have;

> (b)     Representing that the Refrigerators and/or the Defective Compressors installed in them have characteristics, uses, benefits, and qualities which they do not have;

> (c)     Representing that the Refrigerators and/or the Defective Compressors installed in them are of a particular standard, quality, and grade when they are not;

> (d)     Advertising the Refrigerators and/or the Defective Compressors installed in them with the intent not to sell or lease them as advertised;

> (e)     Failing to disclose the Defective Compressors in connection with the sale of the Refrigerators; and

> (f)     Making an assertion of scientific fact in an advertisement which would cause a reasonable person to believe that the assertion is true.

Nev. Rev. Stat. §§ 598.0915(5), (7), (9), (15), 598.0923(2), and 598.0925.

530.    LG's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Refrigerators had a properly-functioning and reliable cooling system. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable

consumers, including Plaintiffs and Class Members, about the functionality and reliability of the Refrigerators and/or the Defective Compressors installed in them, the quality of the Refrigerators, and the true value of the Refrigerators.

531.    LG intended for Plaintiffs and Class Members to rely on its misrepresentations, omissions, and concealment—which they did by purchasing the Refrigerators at the prices they paid believing that their purchase would not have a Compressor Defect that would affect the quality and reliability of the Refrigerators.

532.    LG's misrepresentations, concealments, omissions, and suppressions of material facts regarding the Compressor Defect and true characteristics of the Refrigerators were material to the decisions of Plaintiffs and Class Members to purchase those Refrigerators, as LG intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on LG's misrepresentations that the Refrigerators were properly-functioning and reliable in deciding to purchase the Refrigerators.

533.    Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that LG's representations were false and misleading, or otherwise learning the facts that LG had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel LG's deception on their own.

534.    Had they known the truth about the Compressor Defect, Plaintiffs and Class Members would not have purchased the Refrigerators, or would have paid significantly less for them.

535.    As a direct and proximate result of LG's deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a Refrigerator they otherwise would not have purchased or paying more than they otherwise would have as a result of

LG's actions and omissions alleged above—that first occurred at the time each Refrigerator was purchased.

536.    Pursuant to Nev. Rev. Stat. § 41.600, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the Nevada DTPA.

## I.    NEW YORK

**New York Count 1: Breach of Express Warranty (N.Y. U.C.C. §§ 2-313 and 2A-210)**

537.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

538.    Plaintiffs Reen Chai, Nicole Jones, Eileen Grady, Pauline Saraceni, and Mariela E. Shaw ("Plaintiffs" for purposes of the New York Counts) bring this count under New York law, individually and on behalf of the other members of the New York Subclasses against LG.

539.    For purposes of this count, members of the New York Subclasses shall be referred to as "Class Members."

540.    The Refrigerators are "goods" under N.Y. U.C.C. §§ 2-105(1) and 2A-103(1)(h).

541.    LG is a "merchant" of the Refrigerators under N.Y. U.C.C. § 2-104(1), and a "seller" under § 2-103(1)(d).

542.    Plaintiffs and Class Members who purchased the Refrigerators in New York are "buyers" under N.Y. U.C.C. § 2-103(1)(a).

543.    LG issued an express written warranty for each defective Refrigerator it sold, including that:

(a)    The Refrigerators would be free of defects in materials and workmanship at the time of sale; and

(b)    The Refrigerators were reliable and at a minimum would function properly during the warranty period.

544.    The warranties listed above formed the basis of the bargain with regard to Plaintiffs and Class Members' purchase of the Refrigerators.

545.    LG knowingly breached its warranty for the Refrigerators because:

(a)    The Refrigerators contain the Compressor Defect that renders the Refrigerators unable to perform their most basic function: cooling and preserving food and beverages; and

(b)    LG denied, concealed, and misrepresented the Compressor Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

546.    LG knew or should have known that the warranties were false and/or misleading. Specifically, LG was aware of the Compressor Defect in the Refrigerators, which made the Refrigerators inherently defective at the time that they were sold to Plaintiffs and Class Members.

547.    Plaintiffs and Class Members were exposed to LG's misrepresentations, and they had no way of discerning that LG's representations were false and misleading or otherwise learning the material facts that LG had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on LG's express warranties when purchasing their Refrigerators.

548.    Plaintiffs and Class Members timely provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing LG's notice above.

549.    Alternatively, Plaintiffs and Class Members were excused from providing LG with notice and an opportunity to cure the breach, because it would have been futile.

550.    As a direct and proximate result of LG's breach of its express warranties, the Refrigerators were and are defective and the Compressor Defect was not remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase for the Refrigerators with a latent defect that would not be remedied.

**New York Count 2: Breach of Implied Warranty of Merchantability (N.Y. U.C.C. §§ 2-314 and 2A-212)**

551.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

552.    Plaintiffs Reen Chai, Nicole Jones, Eileen Grady, Pauline Saraceni, and Mariela E. Shaw ("Plaintiffs" for purposes of the New York Counts) bring this count under New York law, individually and on behalf of the other members of the New York Subclasses against LG.

553.    For purposes of this count, members of the New York Subclasses shall be referred to as "Class Members."

554.    The Refrigerators are "goods" under N.Y. U.C.C. §§ 2-105(1) and 2A-103(1)(h).

555.    LG is a "merchant" of the Refrigerators under N.Y. U.C.C. § 2-104(1), and a "seller" under § 2-103(1)(d).

556.    Plaintiffs and Class Members who purchased the Refrigerators in New York are "buyers" under N.Y. U.C.C. § 2-103(1)(a).

557.    New York law conferred an implied warranty that the Refrigerators were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to N.Y. U.C.C. §§ 2-314 and 2A-212.

558.    The Refrigerators are not merchantable, and as such LG breached their implied warranties, because at the time of sale and all times thereafter:

(a)  The Refrigerators would not pass without objection in the home appliance trade given the Compressor Defect;

(b)  The Compressor Defect renders the Refrigerators unfit for ordinary purposes;

(c)  The packaging and user manuals of the Refrigerators failed to disclose the Compressor Defect; and

(d)  The Refrigerators do not conform to their labeling, which represents that the Refrigerators are suitable for their intended use.

559.  Plaintiffs and Class Members timely provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing LG's notice above.

560.  Alternatively, Plaintiffs and Class Members were excused from providing LG with notice and an opportunity to cure the breach because it would have been futile.

561.  Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

**New York Count 3: Violation of New York General Business Law § 349 (N.Y. Gen. Bus. Law § 349, *et seq.*)**

562.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

563.  Plaintiffs Reen Chai, Nicole Jones, Eileen Grady, Pauline Saraceni, and Mariela E. Shaw ("Plaintiffs" for purposes of the New York Counts) bring this count under New York law, individually and on behalf of the other members of the New York Subclasses against LG.

564. For purposes of this count, members of the New York Subclasses shall be referred to as "Class Members."

565. Plaintiffs and Class Members are "persons" under N.Y. Gen. Bus. Law § 349(h).

566. LG is each a "person," "firm," "corporation," or "association" under N.Y. Gen. Bus. Law § 349.

567. The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce[.]" N.Y. Gen. Bus. Law § 349.

568. In the course of their business, LG, through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability and performance of the Refrigerators and the Defective Compressors, as detailed above.

569. LG had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the New York DAPA in the course of their business. Specifically, LG owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Compressors in the Refrigerators because:

    (a)    Given LG's role in the design, manufacture, testing, and sale of Refrigerators and Defective Compressors it possessed exclusive access to and was in a superior position to know the true facts about the Defective Compressors;

    (b)    Given the Compressor Defect's hidden and technical nature, Plaintiffs and Class Members lack the expertise in refrigeration technology that would be necessary to discover the Compressor Defect on their own;

(c)    LG knew that the Compressor Defect gave rise to serious concerns for the consumers who purchased the Refrigerators; and

(d)    LG made, helped to make, or conspired to make incomplete representations about the performance and reliability of the Refrigerators, while purposefully withholding material facts about a known defect. Because LG volunteered to provide information about the Refrigerators that they marketed and offered for sale to consumers, LG had the duty to disclose the whole truth.

570.    LG's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Refrigerators had a properly-functioning and reliable cooling system. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the functionality and reliability of the Refrigerators and/or the Defective Compressors installed in them, the quality of the Refrigerators, and the true value of the Refrigerators.

571.    LG intended for Plaintiffs and Class Members to rely on its misrepresentations, omissions, and concealment—which they did by purchasing the Refrigerators at the prices they paid believing that their purchase would not have a Compressor Defect that would affect the quality and reliability of the Refrigerators.

572.    LG's misrepresentations, concealments, omissions, and suppressions of material facts regarding the Compressor Defect and true characteristics of the Refrigerators were material to the decisions of Plaintiffs and Class Members to purchase those Refrigerators, as LG intended.

Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on LG's misrepresentations that the Refrigerators were properly-functioning and reliable in deciding to purchase the Refrigerators.

573.    Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that LG's representations were false and misleading, or otherwise learning the facts that LG had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel LG's deception on their own.

574.    Had they known the truth about the Compressor Defect, Plaintiffs and Class Members would not have purchased the Refrigerators, or would have paid significantly less for them.

575.    As a direct and proximate result of LG's deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a Refrigerator they otherwise would not have purchased or paying more than they otherwise would have as a result of LG's actions and omissions alleged above—that first occurred at the time each Refrigerator was purchased.

576.    Pursuant to N.Y. Gen. Bus. Law § 349, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the New York DAPA.

### J.    NORTH CAROLINA

**North Carolina Count 1: Breach of Express Warranty (N.C. Gen. Stat. §§ 25-2-313 and 25-2A-210)**

577.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

578.    Plaintiffs Tim Kivlin and Noah Gordon ("Plaintiffs" for purposes of the North Carolina Counts) bring this count under North Carolina law, individually and on behalf of the other members of the North Carolina Subclasses against LG.

579.    For purposes of this count, members of the North Carolina Subclasses shall be referred to as "Class Members."

580.    The Refrigerators are "goods" under N.C. Gen. Stat. §§ 25-2-105(1) and 25-2A-103(1)(h).

581.    LG is a "merchant" of the Refrigerators under N.C. Gen. Stat. §§ 25-2-104(1) and 25-2A-103(3), and a "seller" under § 25-2-103(1)(d).

582.    Plaintiffs and Class Members who purchased the Refrigerators in North Carolina are "buyers" under N.C. Gen. Stat. § 25-2-103(1)(a).

583.    LG issued an express written warranty for each defective Refrigerator it sold, including that:

      (a)    The Refrigerators would be free of defects in materials and workmanship at the time of sale; and

      (b)    The Refrigerators were reliable and at a minimum would function properly during the warranty period.

584.    The warranties listed above formed the basis of the bargain with regard to Plaintiffs and Class Members' purchase of the Refrigerators.

585.    LG knowingly breached its warranty for the Refrigerators because:

      (a)    The Refrigerators contain the Compressor Defect that renders the Refrigerators unable to perform their most basic function: cooling and preserving food and beverages; and

(b)     LG denied, concealed, and misrepresented the Compressor Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

586.    LG knew or should have known that the warranties were false and/or misleading. Specifically, LG was aware of the Compressor Defect in the Refrigerators, which made the Refrigerators inherently defective at the time that they were sold to Plaintiffs and Class Members.

587.    Plaintiffs and Class Members were exposed to LG's misrepresentations, and they had no way of discerning that LG's representations were false and misleading or otherwise learning the material facts that LG had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on LG's express warranties when purchasing their Refrigerators.

588.    Plaintiffs and Class Members timely provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing LG's notice above.

589.    Alternatively, Plaintiffs and Class Members were excused from providing LG with notice and an opportunity to cure the breach, because it would have been futile.

590.    As a direct and proximate result of LG's breach of its express warranties, the Refrigerators were and are defective and the Compressor Defect was not remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase for the Refrigerators with a latent defect that would not be remedied.

**North Carolina Count 2: Breach of Implied Warranty of Merchantability (N.C. Gen. Stat. §§ 25-2-314 and 25-2A-212)**

591.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

592.    Plaintiffs Tim Kivlin and Noah Gordon ("Plaintiffs" for purposes of the North Carolina Counts) bring this count under North Carolina law, individually and on behalf of the other members of the North Carolina Subclasses against LG.

593.    For purposes of this count, members of the North Carolina Subclasses shall be referred to as "Class Members."

594.    The Refrigerators are "goods" under N.C. Gen. Stat. §§ 25-2-105(1) and 25-2A-103(1)(h).

595.    LG is a "merchant" of the Refrigerators under N.C. Gen. Stat. § 25-2-104(1), and a "seller" under § 25-2-103(1)(d).

596.    Plaintiffs and Class Members who purchased the Refrigerators in North Carolina are "buyers" under N.C. Gen. Stat. § 25-2-103(1)(a).

597.    North Carolina law conferred an implied warranty that the Refrigerators were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to N.C. Gen. Stat. §§ 25-2-314 and 25-2A-212.

598.    The Refrigerators are not merchantable, and as such LG breached their implied warranties, because at the time of sale and all times thereafter:

(a)    The Refrigerators would not pass without objection in the home appliance trade given the Compressor Defect;

(b)    The Compressor Defect renders the Refrigerators unfit for ordinary purposes;

(c)    The packaging and user manuals of the Refrigerators failed to disclose the Compressor Defect; and

(d)    The Refrigerators do not conform to their labeling, which represents that the Refrigerators are suitable for their intended use.

599.    Plaintiffs and Class Members timely provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing LG's notice above.

600.    Alternatively, Plaintiffs and Class Members were excused from providing LG with notice and an opportunity to cure the breach because it would have been futile.

601.    Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

**North Carolina Count 3: Violation of the North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. § 75-1.1, *et seq.*)**

602.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

603.    Plaintiffs Tim Kivlin and Noah Gordon ("Plaintiffs" for purposes of the North Carolina Counts) bring this count under North Carolina law, individually and on behalf of the other members of the North Carolina Subclasses against LG.

604.    For purposes of this count, members of the North Carolina Subclasses shall be referred to as "Class Members."

605.    LG is engaged in "commerce" under N.C. Gen. Stat. § 75-1.1(b).

606.    The North Carolina Unfair and Deceptive Trade Practices Act ("North Carolina UDTPA") makes unlawful any "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a).

607.   In the course of their business, LG, through its agents, employees, and/or subsidiaries, violated the North Carolina UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability and performance of the Refrigerators and the Defective Compressors, as detailed above.

608.   LG had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the North Carolina UDTPA in the course of their business. Specifically, LG owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Compressors in the Refrigerators because:

(a)   Given LG's role in the design, manufacture, testing, and sale of Refrigerators and Defective Compressors it possessed exclusive access to and was in a superior position to know the true facts about the Defective Compressors;

(b)   Given the Compressor Defect's hidden and technical nature, Plaintiffs and Class Members lack the expertise in refrigeration technology that would be necessary to discover the Compressor Defect on their own;

(c)   LG knew that the Compressor Defect gave rise to serious concerns for the consumers who purchased the Refrigerators; and

(d)   LG made, helped to make, or conspired to make incomplete representations about the performance and reliability of the Refrigerators, while purposefully withholding material facts about a known defect. Because LG volunteered to provide information about the Refrigerators that they marketed and offered for sale to consumers, LG had the duty to disclose the whole truth.

609.    LG's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Refrigerators had a properly-functioning and reliable cooling system. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the functionality and reliability of the Refrigerators and/or the Defective Compressors installed in them, the quality of the Refrigerators, and the true value of the Refrigerators.

610.    LG intended for Plaintiffs and Class Members to rely on its misrepresentations, omissions, and concealment—which they did by purchasing the Refrigerators at the prices they paid believing that their purchase would not have a Compressor Defect that would affect the quality and reliability of the Refrigerators.

611.    LG's misrepresentations, concealments, omissions, and suppressions of material facts regarding the Compressor Defect and true characteristics of the Refrigerators were material to the decisions of Plaintiffs and Class Members to purchase those Refrigerators, as LG intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on LG's misrepresentations that the Refrigerators were properly-functioning and reliable in deciding to purchase the Refrigerators.

612.    Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that LG's representations were false and misleading, or otherwise learning the facts that LG had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel LG's deception on their own.

613.    Had they known the truth about the Compressor Defect, Plaintiffs and Class Members would not have purchased the Refrigerators, or would have paid significantly less for them.

614.    As a direct and proximate result of LG's deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a Refrigerator they otherwise would not have purchased or paying more than they otherwise would have as a result of LG's actions and omissions alleged above—that first occurred at the time each Refrigerator was purchased.

615.    Pursuant to N.C. Gen. Stat. § 75-16, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the North Carolina UDTPA.

### K.    OREGON

**Oregon Count 1: Breach of Express Warranty (Or. Rev. Stat. §§ 72.3130 and 72A.2100)**

616.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

617.    Plaintiffs Lauri Gilmer, Jessie Lynch, and Richard Nelson ("Plaintiffs" for purposes of the Oregon Counts) bring this count under Oregon law, individually and on behalf of the other members of the Oregon Subclasses against LG.

618.    For purposes of this count, members of the Oregon Subclasses shall be referred to as "Class Members."

619.    The Refrigerators are "goods" under Or. Rev. Stat. §§ 72.1050(1) and 72A.1030(1)(h).

620.    LG is a "merchant" of the Refrigerators under Or. Rev. Stat. §§ 72.1040(1) and 721.1030(1)(t), and a "seller" under § 72.1030(1)(d).

621.    Plaintiffs and Class Members who purchased the Refrigerators in Oregon are "buyers" under Or. Rev. Stat. § 72.1030(1)(a).

622.    LG issued an express written warranty for each defective Refrigerator it sold, including that:

(a)    The Refrigerators would be free of defects in materials and workmanship at the time of sale; and

(b)    The Refrigerators were reliable and at a minimum would function properly during the warranty period.

623.    The warranties listed above formed the basis of the bargain with regard to Plaintiffs and Class Members' purchase of the Refrigerators.

624.    LG knowingly breached its warranty for the Refrigerators because:

(a)    The Refrigerators contain the Compressor Defect that renders the Refrigerators unable to perform their most basic function: cooling and preserving food and beverages; and

(b)    LG denied, concealed, and misrepresented the Compressor Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

625.    LG knew or should have known that the warranties were false and/or misleading. Specifically, LG was aware of the Compressor Defect in the Refrigerators, which made the Refrigerators inherently defective at the time that they were sold to Plaintiffs and Class Members.

626.    Plaintiffs and Class Members were exposed to LG's misrepresentations, and they had no way of discerning that LG's representations were false and misleading or otherwise

118

learning the material facts that LG had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on LG's express warranties when purchasing their Refrigerators.

627.    Plaintiffs and Class Members timely provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing LG's notice above.

628.    Alternatively, Plaintiffs and Class Members were excused from providing LG with notice and an opportunity to cure the breach, because it would have been futile.

629.    As a direct and proximate result of LG's breach of its express warranties, the Refrigerators were and are defective and the Compressor Defect was not remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase for the Refrigerators with a latent defect that would not be remedied.

### Oregon Count 2: Breach of Implied Warranty of Merchantability (Or. Rev. Stat. §§ 72.3140 and 72A.2120)

630.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

631.    Plaintiffs Lauri Gilmer, Jessie Lynch, and Richard Nelson ("Plaintiffs" for purposes of the Oregon Counts) bring this count under Oregon law, individually and on behalf of the other members of the Oregon Subclasses against LG.

632.    For purposes of this count, members of the Oregon Subclasses shall be referred to as "Class Members."

633.    The Refrigerators are "goods" under Or. Rev. Stat. §§ 25-2-105(1) and 25-2A-103(1)(h).

634.   LG is a "merchant" of the Refrigerators under Or. Rev. Stat. §§ 72.1040(1) and 721.1030(1)(t), and a "seller" under § 72.1030(1)(d).

635.   Plaintiffs and Class Members who purchased the Refrigerators in Oregon are "buyers" under Or. Rev. Stat. § 72.1030(1)(a).

636.   Oregon law conferred an implied warranty that the Refrigerators were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Or. Rev. Stat. §§ 72.3140 and 72A.2120.

637.   The Refrigerators are not merchantable, and as such LG breached their implied warranties, because at the time of sale and all times thereafter:

(a)   The Refrigerators would not pass without objection in the home appliance trade given the Compressor Defect;

(b)   The Compressor Defect renders the Refrigerators unfit for ordinary purposes;

(c)   The packaging and user manuals of the Refrigerators failed to disclose the Compressor Defect; and

(d)   The Refrigerators do not conform to their labeling, which represents that the Refrigerators are suitable for their intended use.

638.   Plaintiffs and Class Members timely provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing LG's notice above.

639.   Alternatively, Plaintiffs and Class Members were excused from providing LG with notice and an opportunity to cure the breach because it would have been futile.

640.    Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

**Oregon Count 3: Violation of the Oregon Unlawful Trade Practices Act (Or. Rev. Stat. § 646.605, *et seq.*)**

641.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

642.    Plaintiffs Lauri Gilmer, Jessie Lynch, and Richard Nelson ("Plaintiffs" for purposes of the Oregon Counts) bring this count under Oregon law, individually and on behalf of the other members of the Oregon Subclasses against LG.

643.    For purposes of this count, members of the Oregon Subclasses shall be referred to as "Class Members."

644.    LG, Plaintiffs, and Class Members are "persons" under Or. Rev. Stat. § 646.605(4).

645.    LG is engaged in "trade" and "commerce" under Or. Rev. Stat. § 646.605(8).

646.    The Oregon Unlawful Trade Practices Act ("Oregon UTPA") prohibits unlawful practice in the course of business. Or. Rev. Stat. § 646.608(1).

647.    In the course of their business, LG, through its agents, employees, and/or subsidiaries, violated the Oregon UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability and performance of the Refrigerators and the Defective Compressors, as detailed above.

648.    LG had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Oregon UTPA in the course of their business. Specifically, LG owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Compressors in the Refrigerators because:

(a)     Given LG's role in the design, manufacture, testing, and sale of Refrigerators and Defective Compressors it possessed exclusive access to and was in a superior position to know the true facts about the Defective Compressors;

(b)     Given the Compressor Defect's hidden and technical nature, Plaintiffs and Class Members lack the expertise in refrigeration technology that would be necessary to discover the Compressor Defect on their own;

(c)     LG knew that the Compressor Defect gave rise to serious concerns for the consumers who purchased the Refrigerators; and

(d)     LG made, helped to make, or conspired to make incomplete representations about the performance and reliability of the Refrigerators, while purposefully withholding material facts about a known defect. Because LG volunteered to provide information about the Refrigerators that they marketed and offered for sale to consumers, LG had the duty to disclose the whole truth.

649.    By misrepresenting the Refrigerators as properly functioning and reliable and the compressors installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Compressor Defect to consumers, LG engaged in one or more of the following unfair or deceptive business practices prohibited by Or. Rev. Stat. § 646.608(1):

(a)     Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Refrigerators;

(b)   Representing that the Refrigerators have approval, characteristics, uses, or benefits that they do not have;

(c)   Representing that the Refrigerators are of a particular standard, quality, and grade when they are not; and/or

(d)   Advertising the Refrigerators with the intent not to sell or lease them as advertised.

Or. Rev. Stat. § 646.608(1)(b), (e), (g), (*i*).

650.   LG's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Refrigerators had a properly-functioning and reliable cooling system. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the functionality and reliability of the Refrigerators and/or the Defective Compressors installed in them, the quality of the Refrigerators, and the true value of the Refrigerators.

651.   LG intended for Plaintiffs and Class Members to rely on its misrepresentations, omissions, and concealment—which they did by purchasing the Refrigerators at the prices they paid believing that their purchase would not have a Compressor Defect that would affect the quality and reliability of the Refrigerators.

652.   LG's misrepresentations, concealments, omissions, and suppressions of material facts regarding the Compressor Defect and true characteristics of the Refrigerators were material to the decisions of Plaintiffs and Class Members to purchase those Refrigerators, as LG intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions,

and suppressions of material facts, and relied on LG's misrepresentations that the Refrigerators were properly-functioning and reliable in deciding to purchase the Refrigerators.

653.    Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that LG's representations were false and misleading, or otherwise learning the facts that LG had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel LG's deception on their own.

654.    Had they known the truth about the Compressor Defect, Plaintiffs and Class Members would not have purchased the Refrigerators, or would have paid significantly less for them.

655.    As a direct and proximate result of LG's deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a Refrigerator they otherwise would not have purchased or paying more than they otherwise would have as a result of LG's actions and omissions alleged above—that first occurred at the time each Refrigerator was purchased.

656.    Pursuant to Or. Rev. Stat. § 646.638, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the Oregon UTPA.

L.    **PENNSYLVANIA**

**Pennsylvania Count 1: Breach of Express Warranty (13 Pa. Cons. Stat. §§ 2313 and 2A210)**

657.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

658.    Plaintiffs Steven Thomas and Jeffrey S. Weik ("Plaintiffs" for purposes of the Pennsylvania Counts) bring this count under Pennsylvania law, individually and on behalf of the other members of the Pennsylvania Subclasses against LG.

659.    For purposes of this count, members of the Pennsylvania Subclasses shall be referred to as "Class Members."

660.    The Refrigerators are "goods" under 13 Pa. Cons. Stat. §§ 2105(1) and 2A103(a).

661.    LG is a "merchant" of the Refrigerators under 13 Pa. Cons. Stat. §§ 2104 and 2A103(c), and a "seller" under § 2103(a).

662.    Plaintiffs and Class Members who purchased the Refrigerators in Pennsylvania are "buyers" under 13 Pa. Cons. Stat. § 2103(a).

663.    LG issued an express written warranty for each defective Refrigerator it sold, including that:

(a)    The Refrigerators would be free of defects in materials and workmanship at the time of sale; and

(b)    The Refrigerators were reliable and at a minimum would function properly during the warranty period.

664.    The warranties listed above formed the basis of the bargain with regard to Plaintiffs and Class Members' purchase of the Refrigerators.

665.    LG knowingly breached its warranty for the Refrigerators because:

(a)    The Refrigerators contain the Compressor Defect that renders the Refrigerators unable to perform their most basic function: cooling and preserving food and beverages; and

(b)    LG denied, concealed, and misrepresented the Compressor Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

666.    LG knew or should have known that the warranties were false and/or misleading. Specifically, LG was aware of the Compressor Defect in the Refrigerators, which made the Refrigerators inherently defective at the time that they were sold to Plaintiffs and Class Members.

667.    Plaintiffs and Class Members were exposed to LG's misrepresentations, and they had no way of discerning that LG's representations were false and misleading or otherwise learning the material facts that LG had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on LG's express warranties when purchasing their Refrigerators.

668.    Plaintiffs and Class Members timely provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing LG's notice above.

669.    Alternatively, Plaintiffs and Class Members were excused from providing LG with notice and an opportunity to cure the breach, because it would have been futile.

670.    As a direct and proximate result of LG's breach of its express warranties, the Refrigerators were and are defective and the Compressor Defect was not remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase for the Refrigerators with a latent defect that would not be remedied.

### Pennsylvania Count 2: Breach of Implied Warranty of Merchantability (13 Pa. Cons. Stat. §§ 2314 and 2A212)

671.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

672.    Plaintiffs Steven Thomas and Jeffrey S. Weik ("Plaintiffs" for purposes of the Pennsylvania Counts) bring this count under Pennsylvania law, individually and on behalf of the other members of the Pennsylvania Subclasses against LG.

673.    For purposes of this count, members of the Pennsylvania Subclasses shall be referred to as "Class Members."

674.    The Refrigerators are "goods" under 13 Pa. Cons. Stat. §§ 2105(1) and 2A103(a).

675.    LG is a "merchant" of the Refrigerators under 13 Pa. Cons. Stat. §§ 2104 and 2A103(c), and a "seller" under § 2103(a).

676.    Plaintiffs and Class Members who purchased the Refrigerators in Pennsylvania are "buyers" under 13 Pa. Cons. Stat. § 2103(a).

677.    Pennsylvania law conferred an implied warranty that the Refrigerators were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to 13 Pa. Cons. Stat. §§ 2314 and 2A212.

678.    The Refrigerators are not merchantable, and as such LG breached their implied warranties, because at the time of sale and all times thereafter:

(a)    The Refrigerators would not pass without objection in the home appliance trade given the Compressor Defect;

(b)    The Compressor Defect renders the Refrigerators unfit for ordinary purposes;

(c)    The packaging and user manuals of the Refrigerators failed to disclose the Compressor Defect; and

(d)    The Refrigerators do not conform to their labeling, which represents that the Refrigerators are suitable for their intended use.

679.    Plaintiffs and Class Members timely provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing LG's notice above.

680.    Alternatively, Plaintiffs and Class Members were excused from providing LG with notice and an opportunity to cure the breach because it would have been futile.

681.    Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

### Pennsylvania Count 3: Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 Pa. Cons. Stat. § 201-1, *et seq.*)

682.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

683.    Plaintiffs Steven Thomas and Jeffrey S. Weik ("Plaintiffs" for purposes of the Pennsylvania Counts) bring this count under Pennsylvania law, individually and on behalf of the other members of the Pennsylvania Subclasses against LG.

684.    For purposes of this count, members of the Pennsylvania Subclasses shall be referred to as "Class Members."

685.    LG, Plaintiffs, and Class Members are "persons" under 73 Pa. Cons. Stat. § 201-2(2).

686.    Plaintiffs and Class Members purchased their Refrigerators primarily for personal, family, or household purposes within the meaning of 73 Pa. Cons. Stat. § 201-9.2(a).

687.    LG is engaged in "trade" and "commerce" under 73 Pa. Cons. Stat. § 201-2(3).

688.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits "unfair or deceptive acts or practices in the course of any trade or commerce[.]" 73 Pa. Cons. Stat. § 201-3.

689.    In the course of their business, LG, through its agents, employees, and/or subsidiaries, violated the Pennsylvania CPL by knowingly and intentionally misrepresenting,

omitting, concealing, and/or failing to disclose material facts regarding the reliability and performance of the Refrigerators and the Defective Compressors, as detailed above.

690.    LG had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Pennsylvania CPL in the course of their business. Specifically, LG owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Compressors in the Refrigerators because:

(a)    Given LG's role in the design, manufacture, testing, and sale of Refrigerators and Defective Compressors it possessed exclusive access to and was in a superior position to know the true facts about the Defective Compressors;

(b)    Given the Compressor Defect's hidden and technical nature, Plaintiffs and Class Members lack the expertise in refrigeration technology that would be necessary to discover the Compressor Defect on their own;

(c)    LG knew that the Compressor Defect gave rise to serious concerns for the consumers who purchased the Refrigerators; and

(d)    LG made, helped to make, or conspired to make incomplete representations about the performance and reliability of the Refrigerators, while purposefully withholding material facts about a known defect. Because LG volunteered to provide information about the Refrigerators that they marketed and offered for sale to consumers, LG had the duty to disclose the whole truth.

691.    By misrepresenting the Refrigerators as properly functioning and reliable and the compressors installed in them as properly functioning and free from defects, and/or by failing to

disclose and actively concealing the dangers and risk posed by the Compressor Defect to consumers, LG engaged in one or more of the following unfair or deceptive business practices prohibited by the Pennsylvania CPL:

> (a)     Representing that the Refrigerators and/or the Defective Compressors installed in them have characteristics, uses, benefits, and qualities which they do not have.

692.    Representing that the Refrigerators and/or the Defective Compressors installed in them are of a particular standard, quality, and grade when they are not.

693.    Advertising the Refrigerators and/or the Defective Compressors installed in them with the intent not to sell or lease them as advertised.

694.    Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

73 Pa. Cons. Stat. § 201-2(4)(v), (vii), (ix), and (xxi).

695.    LG's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Refrigerators had a properly-functioning and reliable cooling system. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the functionality and reliability of the Refrigerators and/or the Defective Compressors installed in them, the quality of the Refrigerators, and the true value of the Refrigerators.

696.    LG intended for Plaintiffs and Class Members to rely on its misrepresentations, omissions, and concealment—which they did by purchasing the Refrigerators at the prices they

paid believing that their purchase would not have a Compressor Defect that would affect the quality and reliability of the Refrigerators.

697.    LG's misrepresentations, concealments, omissions, and suppressions of material facts regarding the Compressor Defect and true characteristics of the Refrigerators were material to the decisions of Plaintiffs and Class Members to purchase those Refrigerators, as LG intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on LG's misrepresentations that the Refrigerators were properly-functioning and reliable in deciding to purchase the Refrigerators.

698.    Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that LG's representations were false and misleading, or otherwise learning the facts that LG had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel LG's deception on their own.

699.    Had they known the truth about the Compressor Defect, Plaintiffs and Class Members would not have purchased the Refrigerators, or would have paid significantly less for them.

700.    As a direct and proximate result of LG's deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a Refrigerator they otherwise would not have purchased or paying more than they otherwise would have as a result of LG's actions and omissions alleged above—that first occurred at the time each Refrigerator was purchased.

701.    Pursuant to 73 Pa. Cons. Stat. § 201-9.2(a), Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the Pennsylvania CPL.

### M.    TEXAS

**Texas Count 1: Breach of Express Warranty (Tex. Bus. & Com. Code Ann. §§ 2.313 and 2A.210)**

702.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

703.    Plaintiffs Kathy Greer, Jacquelyn Johnson, Marvin McAnderson, and Marcial Nanez ("Plaintiffs" for purposes of the Texas Counts) bring this count under Texas law, individually and on behalf of the other members of the Texas Subclasses against LG for his or her respective Refrigerator(s).

704.    For purposes of this count, members of the Texas Subclasses shall be referred to as "Class Members."

705.    The Refrigerators are "goods" under Tex. Bus. & Com. Code Ann. §§ 2.105(a) and 2A.103(a)(h).

706.    LG is a "merchant" of the Refrigerators under Tex. Bus. & Com. Code Ann. §§ 2.104(a) and 2A.103(c), and a "seller" under § 2.103(a)(4).

707.    Plaintiffs and Class Members who purchased the Refrigerators in Texas are "buyers" under Tex. Bus. & Com. Code Ann. §§ 2.103(a)(1).

708.    LG issued an express written warranty for each defective Refrigerator it sold, including that:

    (a)    The Refrigerators would be free of defects in materials and workmanship at the time of sale; and

    (b)    The Refrigerators were reliable and at a minimum would function properly during the warranty period.

709.    The warranties listed above formed the basis of the bargain with regard to Plaintiffs and Class Members' purchase of the Refrigerators.

710.    LG knowingly breached its warranty for the Refrigerators because:

(a)    The Refrigerators contain the Compressor Defect that renders the Refrigerators unable to perform their most basic function: cooling and preserving food and beverages; and

(b)    LG denied, concealed, and misrepresented the Compressor Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

711.    LG knew or should have known that the warranties were false and/or misleading. Specifically, LG was aware of the Compressor Defect in the Refrigerators, which made the Refrigerators inherently defective at the time that they were sold to Plaintiffs and Class Members.

712.    Plaintiffs and Class Members were exposed to LG's misrepresentations, and they had no way of discerning that LG's representations were false and misleading or otherwise learning the material facts that LG had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on LG's express warranties when purchasing their Refrigerators.

713.    Plaintiffs and Class Members timely provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing LG's notice above.

714.    Alternatively, Plaintiffs and Class Members were excused from providing LG with notice and an opportunity to cure the breach, because it would have been futile.

715.    As a direct and proximate result of LG's breach of its express warranties, the Refrigerators were and are defective and the Compressor Defect was not remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase for the Refrigerators with a latent defect that would not be remedied.

### Texas Count 2: Breach of Implied Warranty of Merchantability (Tex. Bus. & Com. Code Ann. §§ 2.314 and 2A.212)

716.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

717.    Plaintiffs Kathy Greer, Jacquelyn Johnson, Marvin McAnderson, and Marcial Nanez ("Plaintiffs" for purposes of the Texas Counts) bring this count under Texas law, individually and on behalf of the other members of the Texas Subclasses against LG for his or her respective Refrigerator(s).

718.    For purposes of this count, members of the Texas Subclasses shall be referred to as "Class Members."

719.    The Refrigerators are "goods" under Tex. Bus. & Com. Code Ann. §§ 2.105(a) and 2A.103(a)(h).

720.    LG is a "merchant" of the Refrigerators under Tex. Bus. & Com. Code Ann. §§ 2.104(a) and 2A.103(c), and a "seller" under § 2.103(a)(4).

721.    Plaintiffs and Class Members who purchased the Refrigerators in Texas are "buyers" under Tex. Bus. & Com. Code Ann. §§ 2.103(a)(1).

722.    Texas law conferred an implied warranty that the Refrigerators were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Tex. Bus. & Com. Code Ann. §§ 2.314 and 2A.212.

723.    The Refrigerators are not merchantable, and as such LG breached their implied warranties, because at the time of sale and all times thereafter:

(a)    The Refrigerators would not pass without objection in the home appliance trade given the Compressor Defect;

(b)    The Compressor Defect renders the Refrigerators unfit for ordinary purposes;

(c)    The packaging and user manuals of the Refrigerators failed to disclose the Compressor Defect; and

724.    The Refrigerators do not conform to their labeling, which represents that the Refrigerators are suitable for their intended use.Plaintiffs and Class Members timely provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing LG's notice above.

725.    Alternatively, Plaintiffs and Class Members were excused from providing LG with notice and an opportunity to cure the breach because it would have been futile.

726.    Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

**Texas Count 3: Violation of the Texas Consumer Protection Act of 1977 (Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*)**

727.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

728.    Plaintiffs Kathy Greer, Jacquelyn Johnson, Marvin McAnderson, and Marcial Nanez ("Plaintiffs" for purposes of the Texas Counts) bring this count under Texas law, individually and on behalf of the other members of the Texas Subclasses against LG.

729.    For purposes of this count, members of the Texas Subclasses shall be referred to as "Class Members."

730.    LG, Plaintiffs, and Class Members are "persons" under Tex. Bus. & Com. Code Ann. § 17.45(3).

731.    Plaintiffs and Class Members are "consumers" under Tex. Bus. & Com. Code Ann. § 17.45(4).

732.    The Refrigerators and Defective Compressors are "goods" under Tex. Bus. & Com. Code Ann. § 17.45(1).

733.    LG is engaged in "trade" or "commerce" under Tex. Bus. & Com. Code Ann. § 17.45(6).

734.    The Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce[,]" Tex. Bus. & Com. Code Ann. § 17.46(a), and an "unconscionable action or course of action[,]" Tex. Bus. & Com. Code Ann. §§ 17.45(5) and 17.50(a)(3).

735.    In the course of their business, LG, through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability and performance of the Refrigerators and the Defective Compressors, as detailed above.

736.    LG had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Texas DTPA in the course of their business. Specifically, LG owed

Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Compressors in the Refrigerators because:

(a)     Given LG's role in the design, manufacture, testing, and sale of Refrigerators and Defective Compressors it possessed exclusive access to and was in a superior position to know the true facts about the Defective Compressors;

(b)     Given the Compressor Defect's hidden and technical nature, Plaintiffs and Class Members lack the expertise in refrigeration technology that would be necessary to discover the Compressor Defect on their own;

(c)     LG knew that the Compressor Defect gave rise to serious concerns for the consumers who purchased the Refrigerators; and

(d)     LG made, helped to make, or conspired to make incomplete representations about the performance and reliability of the Refrigerators, while purposefully withholding material facts about a known defect. Because LG volunteered to provide information about the Refrigerators that they marketed and offered for sale to consumers, LG had the duty to disclose the whole truth.

737.    By misrepresenting the Refrigerators as properly functioning and reliable and the compressors installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Compressor Defect to consumers, LG engaged in one or more of the following unfair or deceptive business practices prohibited by the Texas DTPA:

(a)    Representing that the Refrigerators and the Defective Compressors installed in them have characteristics, uses, or benefits that they do not have;

(b)    Representing that the Refrigerators and the Defective Compressors installed in them were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard; and

(c)    Advertising the Refrigerators and the Defective Compressors with the intent not to sell or lease them as advertised.

Tex. Bus. & Com. Code Ann. § 17.46(5), (7), and (9).

738.    LG's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Refrigerators had a properly-functioning and reliable cooling system. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the functionality and reliability of the Refrigerators and/or the Defective Compressors installed in them, the quality of the Refrigerators, and the true value of the Refrigerators.

739.    LG intended for Plaintiffs and Class Members to rely on its misrepresentations, omissions, and concealment—which they did by purchasing the Refrigerators at the prices they paid believing that their purchase would not have a Compressor Defect that would affect the quality and reliability of the Refrigerators.

740.    LG's misrepresentations, concealments, omissions, and suppressions of material facts regarding the Compressor Defect and true characteristics of the Refrigerators were material to the decisions of Plaintiffs and Class Members to purchase those Refrigerators, as LG intended.

Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on LG's misrepresentations that the Refrigerators were properly-functioning and reliable in deciding to purchase the Refrigerators.

741.    Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that LG's representations were false and misleading, or otherwise learning the facts that LG had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel LG's deception on their own.

742.    Had they known the truth about the Compressor Defect, Plaintiffs and Class Members would not have purchased the Refrigerators, or would have paid significantly less for them.

743.    As a direct and proximate result of LG's deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a Refrigerator they otherwise would not have purchased or paying more than they otherwise would have as a result of LG's actions and omissions alleged above—that first occurred at the time each Refrigerator was purchased.

744.    Plaintiffs and Class Members timely provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing LG's notice above. Because LG failed to adequately remedy their unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and State Class members are entitled.

745.    Alternatively, any requirement to give notice to the LG under Tex. Bus. & Com. Code Ann. § 17.505(a) is excused because, *inter alia*, notice was impracticable due to the necessity

of filing suit in order to prevent the expiration of the statute of limitations on certain Plaintiffs and Class Members' claims. Additionally, Plaintiffs and Class Members were excused from providing the LG with notice and an opportunity to cure the Compressor Defect, because it would have been futile.

746.    Pursuant to Tex. Bus. & Com. Code Ann. § 17.50, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the Texas DTPA.

## N.    WASHINGTON

### Washington Count 1: Breach of Express Warranty (Wash. Rev. Code §§ 62A.2-313 and 62A.2A-210)

747.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

748.    Plaintiffs Carl Haglund, Gail Hayden, Cynthia Kennedy, and Chawntain Kermen ("Plaintiffs" for purposes of the Washington Counts) bring this count under Washington law, individually and on behalf of the other members of the Washington Subclasses against LG.

749.    For purposes of this count, members of the Washington Subclasses shall be referred to as "Class Members."

750.    The Refrigerators are "goods" under Wash. Rev. Code §§ 62A.2-105(1) and 62A.2A-103(1)(h).

751.    LG is a "merchant" of the Refrigerators under Wash. Rev. Code §§ 62A.2-104(1) and 62A.2A-103(1)(t), and a "seller" under § 62A.2-103(1)(d).

752.    Plaintiffs and Class Members who purchased the Refrigerators in Washington are "buyers" under Wash. Rev. Code §§ 62A.2-103(1)(a).

753.    LG issued an express written warranty for each defective Refrigerator it sold, including that:

    (a)    The Refrigerators would be free of defects in materials and workmanship at the time of sale; and

    (b)    The Refrigerators were reliable and at a minimum would function properly during the warranty period.

754.    The warranties listed above formed the basis of the bargain with regard to Plaintiffs and Class Members' purchase of the Refrigerators.

755.    LG knowingly breached its warranty for the Refrigerators because:

    (a)    The Refrigerators contain the Compressor Defect that renders the Refrigerators unable to perform their most basic function: cooling and preserving food and beverages; and

    (b)    LG denied, concealed, and misrepresented the Compressor Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

756.    LG knew or should have known that the warranties were false and/or misleading. Specifically, LG was aware of the Compressor Defect in the Refrigerators, which made the Refrigerators inherently defective at the time that they were sold to Plaintiffs and Class Members.

757.    Plaintiffs and Class Members were exposed to LG's misrepresentations, and they had no way of discerning that LG's representations were false and misleading or otherwise learning the material facts that LG had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on LG's express warranties when purchasing their Refrigerators.

758.    Plaintiffs and Class Members timely provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing LG's notice above.

759.    Alternatively, Plaintiffs and Class Members were excused from providing LG with notice and an opportunity to cure the breach, because it would have been futile.

760.    As a direct and proximate result of LG's breach of its express warranties, the Refrigerators were and are defective and the Compressor Defect was not remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase for the Refrigerators with a latent defect that would not be remedied.

### Washington Count 2: Breach of Implied Warranty of Merchantability (Wash. Rev. Code §§ 62A.2-314 and 62A.2A-212)

761.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

762.    Plaintiffs Carl Haglund, Gail Hayden, Cynthia Kennedy, and Chawntain Kermen ("Plaintiffs" for purposes of the Washington Counts) bring this count under Washington law, individually and on behalf of the other members of the Washington Subclasses against LG.

763.    For purposes of this count, members of the Washington Subclasses shall be referred to as "Class Members."

764.    The Refrigerators are "goods" under Wash. Rev. Code §§ 62A.2-105(1) and 62A.2A-103(1)(h).

765.    LG is a "merchant" of the Refrigerators under Wash. Rev. Code §§ 62A.2-104(1) and 62A.2A-103(1)(t), and a "seller" under § 62A.2-103(1)(d).

766.    Plaintiffs and Class Members who purchased the Refrigerators in Washington are "buyers" under Wash. Rev. Code §§ 62A.2-103(a)(1).

767.    Washington law conferred an implied warranty that the Refrigerators were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Wash. Rev. Code §§ 62A.2-314 and 62A.2A-212.

(a)    The Refrigerators are not merchantable, and as such LG breached their implied warranties, because at the time of sale and all times thereafter:The Refrigerators would not pass without objection in the home appliance trade given the Compressor Defect;

(b)    The Compressor Defect renders the Refrigerators unfit for ordinary purposes;

(c)    The packaging and user manuals of the Refrigerators failed to disclose the Compressor Defect; and

(d)    The Refrigerators do not conform to their labeling, which represents that the Refrigerators are suitable for their intended use.

768.    Plaintiffs and Class Members timely provided LG notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing LG's notice above.

769.    Alternatively, Plaintiffs and Class Members were excused from providing LG with notice and an opportunity to cure the breach because it would have been futile.

770.    Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

**Washington Count 3: Violation of the Washington Consumer Protection Act (Wash. Rev. Code § 19.86.010, *et seq.*)**

771.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

772.    Plaintiffs Carl Haglund, Gail Hayden, Cynthia Kennedy, and Chawntain Kermen ("Plaintiffs" for purposes of the Washington Counts) bring this count under Washington law, individually and on behalf of the other members of the Washington Subclasses against LG.

773.    For purposes of this count, members of the Washington Subclasses shall be referred to as "Class Members."

774.    LG, Plaintiffs, and Class Members are "persons" under Wash. Rev. Code § 19.86.010(1).

775.    The Refrigerators and the Defective Compressors installed in them are "assets" under Wash. Rev. Code § 19.86.010(3).

776.    LG is engaged in "trade" or "commerce" under Wash. Rev. Code § 19.86.010(2).

777.    The Washington Consumer Protection Act ("Washington CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]." Wash. Rev. Code § 19.86.020.

778.    In the course of their business, LG, through its agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability and performance of the Refrigerators and the Defective Compressors, as detailed above.

779.    LG had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Washington CPA in the course of their business. Specifically, LG

owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Compressors in the Refrigerators because:

(a)   Given LG's role in the design, manufacture, testing, and sale of Refrigerators and Defective Compressors it possessed exclusive access to and was in a superior position to know the true facts about the Defective Compressors;

(b)   Given the Compressor Defect's hidden and technical nature, Plaintiffs and Class Members lack the expertise in refrigeration technology that would be necessary to discover the Compressor Defect on their own;

(c)   LG knew that the Compressor Defect gave rise to serious concerns for the consumers who purchased the Refrigerators; and

(d)   LG made, helped to make, or conspired to make incomplete representations about the performance and reliability of the Refrigerators, while purposefully withholding material facts about a known defect. Because LG volunteered to provide information about the Refrigerators that they marketed and offered for sale to consumers, LG had the duty to disclose the whole truth.

780.   By misrepresenting the Refrigerators as properly functioning and reliable and the compressors installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Compressor Defect to consumers, LG engaged in unfair or deceptive business practices prohibited by Wash. Rev. Code § 19.86.020.

781.    LG's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Refrigerators had a properly-functioning and reliable cooling system. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the functionality and reliability of the Refrigerators and/or the Defective Compressors installed in them, the quality of the Refrigerators, and the true value of the Refrigerators.

782.    LG intended for Plaintiffs and Class Members to rely on its misrepresentations, omissions, and concealment—which they did by purchasing the Refrigerators at the prices they paid believing that their purchase would not have a Compressor Defect that would affect the quality and reliability of the Refrigerators.

783.    LG's misrepresentations, concealments, omissions, and suppressions of material facts regarding the Compressor Defect and true characteristics of the Refrigerators were material to the decisions of Plaintiffs and Class Members to purchase those Refrigerators, as LG intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on LG's misrepresentations that the Refrigerators were properly-functioning and reliable in deciding to purchase the Refrigerators.

784.    Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that LG's representations were false and misleading, or otherwise learning the facts that LG had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel LG's deception on their own.

785.    Had they known the truth about the Compressor Defect, Plaintiffs and Class Members would not have purchased the Refrigerators, or would have paid significantly less for them.

786.    As a direct and proximate result of LG's deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a Refrigerator they otherwise would not have purchased or paying more than they otherwise would have as a result of LG's actions and omissions alleged above—that first occurred at the time each Refrigerator was purchased.

787.    Pursuant to Wash. Rev. Code § 19.86.090, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the Washington CPA.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Classes, pray for judgment against Defendant, granting the following relief:

a.    An order certifying this case as a class action and appointing Plaintiffs' counsel to represent the Class and Plaintiffs as representatives of the Classes;

b.    All recoverable compensatory and other damages sustained by Plaintiffs and the Classes;

c.    Actual, treble, punitive, and/or statutory damages for injuries suffered by Plaintiffs and the Classes in the maximum amount permitted by applicable law;

d.    An order (1) requiring Defendant to cease their wrongful conduct as set forth above immediately; (2) enjoining Defendant from continuing to conceal material information about the

Defective Refrigerators; and (3) requiring Defendant to refund to Plaintiffs and all members of the Classes the funds paid to Defendant for Refrigerator Defect, and/or repairs resulting from the Defective Compressors;

e.    Payment of reasonable attorneys' fees and costs, as may be allowable under applicable law; and

f.    Such other relief as the Court may deem just and proper.

## IX.    **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all causes of action so triable.

Dated:  November 8, 2024                    Respectfully submitted,

_____/s/ James E. Cecchi_____
James E. Cecchi
**CARELLA, BYRNE, CECCHI,**
**BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
(973) 994-1700
jcecchi@carellabyrne.com

Azar Mouzari (*pro hac vice forthcoming*)
Nilofar Nouri (*pro hac vice forthcoming*)
**BEVERLY HILLS**
**TRIAL ATTORNEYS, P.C.**
468 N. Camden Drive, Suite 238
Beverly Hills, California 90210
(310) 858-5567
azar@bhtrialattorneys.com
nilofar@bhtrialattorneys.com

*Counsel for Plaintiffs and proposed Counsel*
*for the putative Class*
